UNITED STATES of America,
Plaintiff–Appellant,

v.

Sol C. SCHWARTZ, Abe Chapman, and
Frank C. Marolda,
Defendants–Appellees.

No. 88–1252.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 12, 1988.

Order Aug. 12, 1988.

Amended Aug. 31, 1988.

Decided Sept. 19, 1988.

Rory K. Little, Special Attorney, Dept. of Justice, San Francisco, Cal., for plaintiff-appellant.

Doron Weinberg, Larson & Weinberg, and Karen Snell, Riordan & Rosenthal, San Francisco, Cal., for defendant-appellee Schwartz.

Manton L. Selby, II, San Francisco, Cal., for defendant-appellee Chapman.

Allen Ruby, Morgan, Ruby, et al., San Jose, Cal., for defendant-appellee Marolda.

Before WRIGHT and POOLE, Circuit Judges, and HUPP, District Judge.[*]

POOLE, Circuit Judge:

The United States appeals from the district court's order excluding the testimony of former co-defendant Raymond F. Lane from the trial of Sol C. Schwartz, Frank C. Marolda and Abe Chapman on charges of violating 18 U.S.C. § 1954 (1982) (offer, acceptance or solicitation to influence operations of employee benefit plan). The government contends that the district court lacked authority to exclude Lane's testimony absent a violation of the court's pretrial discovery order. We agree, and we reverse the district court's exclusionary order.

## FACTS AND PROCEEDINGS BELOW

In *United States v. Schwartz*, 785 F.2d 673, 679–82 (9th Cir.), *cert. denied*, 479 U.S. 890, 107 S.Ct. 290, 93 L.Ed.2d 264 (1986), this court reversed the pretrial dismissal of two counts of a 15–count indictment against Schwartz, Lane, Marolda and Chapman and remanded the case to the district court for trial.[1] On March 29, 1988, during pretrial proceedings on remand, the district court filed its "Guidelines for Criminal Pretrial Preparation," setting June 20, 1988, as the date for trial, and directing the parties to exchange and file witness lists by three days before the pretrial conference, scheduled for June 8. At the pretrial conference, the court warned the parties that it would exclude any evidence not disclosed in the pretrial papers and set a final deadline for filing witness lists of June 15. The government's witness list filed on that date did not include Lane, who was still a defendant in the case.

On Friday, June 17, Lane agreed to provide a factual proffer of testimony to the government as a predicate for a possible plea bargain. Special Attorney Melvyn Rappaport took Lane's proffer between 6:10 and 8:15 p.m. Lane's testimony was conditioned on participation in the Witness Protection Program,[2] and Rappaport sought approval of this condition beginning at 6:00 a.m. on Monday, June 20. Jury selection began later that morning, but insufficient jurors were present to select a petit jury, and jury selection was rescheduled for Thursday, June 23. Later on Monday, the Justice Department approved Lane's application, and Lane pled guilty before the trial judge that afternoon.

Upon joint motion of Lane and the government, the judge ordered the proceedings sealed until Lane's safety was secured. The plea was unsealed on Wednesday morning, June 22, and the government immediately notified defense counsel of Lane's change of plea. Defendants requested and were granted a hearing that afternoon, at which the defendants asked the court to exclude Lane's testimony or, in the alternative, to grant a continuance to allow additional preparation. Defendants argued that the government had violated the pretrial order by failing to disclose its intention to call Lane, and that the defendants were prejudiced because: (1) Lane's

---

[*] The Honorable Harry L. Hupp, United States District Judge for the Central District of California, sitting by designation.

[1] The court also dismissed the government's appeal of a judgment in favor of Schwartz, Lane and Marolda on the other 13 counts, and af-firmed the district court's dismissal of those counts as against Chapman. *Id.* at 676–78.

[2] Lane's concern for his safety apparently arose out of his indictment in an unrelated narcotics distribution case.

counsel, and perhaps Lane himself, were privy to defense secrets and strategies; (2) defendants would not be prepared to cross-examine Lane without investigating his conduct and reviewing "thousands" of tape-recorded conversations; and (3) Marolda's counsel, Alan Ruby, would have to withdraw because he had previously represented Lane and could not cross-examine him. Following argument, the district judge ruled that Lane's testimony would be excluded. The government moved for reconsideration, which was denied the next morning. We granted the government's motion for an expedited appeal and ordered the proceedings stayed pending appeal.

After hearing argument on August 12, we issued an order reversing the district court and remanding the case for trial. *United States v. Schwartz*, 853 F.2d 768 (9th Cir.1988). We now set forth in full the reasons underlying our reversal.

## JURISDICTION

■ We first consider whether we have jurisdiction. Pursuant to 18 U.S.C. § 3731 (Supp. IV 1986), the United States may appeal certain district court pretrial orders "suppressing or excluding evidence."[3] The defendants contend, however, that the district court's order here should be construed as an order denying the government a continuance, and therefore not appealable. This contention is without merit. The government did not seek a continuance; it merely indicated that it was willing to accept a continuance if it were a necessary condition to Lane's testimony. The July 22 hearing was held at the request of the defendants. Schwartz's counsel asked the court "to order the government to proceed under the witness list that was given pursuant to the court's original order." Reporter's Transcript, June 22, 1988, at 16.

Chapman's counsel suggested that the court should either exclude Lane's testimony or, in the alternative, grant a continuance. *Id.* at 18. The district judge's oral pronouncement was "I am ruling that Mr. Lane will not testify in this case." *Id.* at 33. Clearly, the district court's order had the practical effect of "excluding evidence" and was appealable under § 3731. Therefore, we have jurisdiction to review the district court's order.[4]

## STANDARD OF REVIEW

■ The government argues that the question for decision is "whether the district court had any legal basis for its exclusion order," and that therefore review should be de novo, citing *United States v. Gatto*, 763 F.2d 1040, 1045 (9th Cir.1985). The defendants argue that the question is whether the imposition of a sanction for failure to comply with a discovery order was an abuse of discretion. *United States v. Gee*, 695 F.2d 1165, 1168 (9th Cir.1983); *United States v. Valencia*, 656 F.2d 412, 415 (9th Cir.), *cert. denied*, 454 U.S. 877, 102 S.Ct. 356, 70 L.Ed.2d 186 (1981); *accord, United States v. Euceda-Hernandez*, 768 F.2d 1307, 1311–12 (11th Cir.1985) (reviewing exclusion of evidence under § 3731); *United States v. Sarcinelli*, 667 F.2d 5 (5th Cir. Unit B 1982).

These precedents are not inconsistent with each other. In *United States v. Aceves-Rosales*, 832 F.2d 1155, 1156 (9th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1056, 98 L.Ed.2d 1018 (1988), we harmonized these standards by holding that the applicability of Fed.R.Crim.P. 16 was subject to de novo review, citing *Gatto*, but that the propriety of any sanction imposed was reviewable for an abuse of discretion, citing *Gee*. Similarly, in this case we re-

3. 18 U.S.C. § 3731 provides in relevant part: An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence ... not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

4. Defendants do not contest that the government properly certified that the appeal was not taken for the purpose of delay, that the evidence is substantial proof of a fact material in the proceeding, and that the defendants had not yet been placed in jeopardy.

view *de novo* the question whether a willful violation of the pretrial order must be shown, whereas, if sanction is in order, the district court's choice of sanction will be reviewed under the abuse of discretion standard.

## DISCUSSION

■ Decision in this case is controlled by our opinion in *United States v. Gatto*, 763 F.2d 1040 (9th Cir.1985). In *Gatto*, we reversed a district court's order excluding from evidence 382 documents of which the government had failed to notify the defense until a few weeks before trial was scheduled to begin. The documents had been obtained by state authorities more than two years earlier, but had not been turned over to federal agents until the day before the government notified defense counsel of their existence. We held that "the separation of powers principle [i.e., the separateness of the judicial and prosecutorial functions] imposes significant limits" on the district court's supervisory power, and that the district court could not exclude otherwise admissible evidence un-

less a violation of "any constitutional provision, federal statute, specific discovery order, or any other recognized right" was shown. 763 F.2d at 1046.[5]

■ Our review of the proceedings below reveals that the district judge never ruled, or even indicated, that the government had violated the pretrial discovery order or any other statute or rule. Rather, it appears that the court acted out of a generalized concern that the case had been pending for more than five years, and that the defendants had been prepared to meet the evidence as it then existed but now were faced with the prospect of having to prepare anew.[6] However, these reasons are essentially identical to those which were advanced by the district court in *Gatto* to justify its order of exclusion and which were rejected by this court.[7] In our system of government, it is the executive branch, not the judicial branch, which holds the right to determine what, and how much, evidence is needed to attempt to prove guilt in a criminal case. In the absence of a specific constitutional, statutory or other violation warranting the imposition of the exclusionary sanction, and sub-

---

**5.** The only arguable violation in *Gatto* was a failure to comply with Fed.R.Crim.P. 16(a)(1)(C), which requires the government to permit inspection and copying of tangible evidence within the "possession, custody or control" of the government. We held that Rule 16 required that the documents be in the actual possession or control of the government, and that exclusion based on "constructive" possession was improper. *Id.* at 1047.

**6.** We quote the district judge's remarks at the hearing:

It's a very serious problem. I must say that though I'm always glad to get a plea in a criminal case this plea makes a whole brand-new ball game out of it. There isn't any question about that....

And counsel have been—are able, and they've been concerned about it. And the case is, as near as I can tell, on both sides very thoroughly prepared.

And now ... we come in with a new situation ...

\* \* \* \* \* \*

I'm not going to let the case go ahead with Mr. Lane's testimony. The years that have been spent in it, and the surrounding circumstances are just too much embedded I think in everybody's memory and attitude toward the case to upset the present theories.

And I just—I don't think it was fair. I didn't think it was fair on Monday. I was concerned when counsel were going to be made aware of it....

We obviously have to have Mr. Marolda. And it appears clear to me that his new counsel is going to require time to get through all this. That the case simply can't go ahead. And won't go ahead unless it's without Mr. Lane.

R.T., June 22, 1988 at 81, 83–84.

**7.** "[The district judge] maintained that a continuance was insufficient, however, because it failed to satisfy either the demands of due process or notions of fair play and substantial justice, because the time, effort, and money that would be lost would be prejudicial, unfair, and unjust to the defendants. He observed that the indictment had been filed nearly two years before, and thus the sword had hung over the defendants long enough, that they had spent sufficient money on their defense, and that the court had expended sufficient judicial resources in managing the case. Moreover, the trial was set to begin in four days, and postponing it would inconvenience both the court and the defense attorneys in reclearing their calendars." *Gatto*, 763 F.2d at 1044.

ject also to the general rules regulating admissibility, the government is entitled to offer its best evidence to the court and jury.

Defendants argue that the district court was justified in excluding Lane's testimony under the authority of the Supreme Court's opinion in *Taylor v. Illinois*, —— U.S. ——, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). In that case, the Court held that a state trial court's exclusion of a defense witness as a sanction for violating a local pretrial discovery rule did not violate the Compulsory Process Clause of the Sixth Amendment. Defendants read *Taylor* as affirming the district court's supervisory power to enforce its discovery and pretrial orders.

While we fully agree that the district court may exclude documents or witnesses as a sanction for failure to comply with the court's pretrial or discovery orders, we fail to see how that proposition is applicable to the case before us. The district judge here did not rule on the basis, and made no finding, that the government had violated any order of the court. Furthermore, no such finding could be sustained on the record before us. The district court's pretrial guidelines directed the parties to file a "list of witnesses whom they *intend* to call at trial" (emphasis added). Assuming that these "guidelines" constituted a "specific discovery order" which could be enforced by sanctions under *Gatto*, it cannot be said that the government violated this order unless, when it filed its witness list, it then intended to call Lane to testify. Obviously, the government could not then have intended to call Lane, prior to the entry of his guilty plea, since Lane had an absolute privilege not to testify. *See* U.S. Const. amend. V.

Had it been shown that the government had already agreed to a plea bargain with Lane *prior* to the date it filed its witness list, but had refrained from seeking court approval until the eve of trial, we would be faced with a different situation. No such duplicity is even suggested here. At most,

defendants have alleged (and the government has admitted) that plea negotiations had been ongoing for a month or two prior to June 15. But no bargain had been struck, and the showing is therefore insufficient to demonstrate a violation. Ongoing plea negotiations are common, even after trial has begun, and defendants are often reluctant to conclude a deal until the trial is imminent and "the prospect of conviction without leniency is staring [them] hard in the face." Reply Br. at 19. We see no basis for holding that such negotiations alone cast an invidious shadow over the government's conduct in this case. *Cf. United States v. Bavers*, 787 F.2d 1022, 1028–29 (6th Cir.1985) (no abuse of discretion to deny mistrial when co-defendant changed his plea during trial and testified against other defendants). To hold otherwise would generally bar the government from receiving relevant post-pretrial evidence; specifically, in this case it would allow Lane to receive the benefits of his plea agreement while relieving him of his concomitant obligation to testify on the government's behalf. In the absence of misconduct on the part of the government, we will not so divest the plea agreement of its mutuality.

We recognize that Lane's change of plea in this five-year-old conflict came before the district court on very short notice, without any prior warning, and that it significantly changed the character of the case to be presented.[8] With jury selection already postponed once and rescheduled to begin the following day, the judge had to make a decision based on the arguments alone, without the benefit of briefing or extended deliberation. We can only repeat what we said in *Gatto:* "[t]he district judge was properly concerned about the situation which confronted the defendants and the court, but in this instance, and based upon this record, the remedy imposed was not available." 763 F.2d at 1051. Such is the travail all too often imposed upon overworked district judges.

---

**8.** We do not reach the question whether a continuance would have been necessary or appropriate under the circumstances, but leave the question for the district court to consider anew on remand.

With much reluctance, the order excluding Lane's testimony is REVERSED, and the case is REMANDED to the district court for further proceedings not inconsistent with this opinion. The panel will not entertain a petition for rehearing.

HUPP, District Judge, Concurring:

I agree with Judge Poole's opinion that the result in this case is controlled by *United States v. Gatto*, 763 F.2d 1040 (9th Cir.1985). I write separately to protest the holding in *Gatto*.

When a major criminal case, such as this one, goes to trial, the trial court must take significant action affecting other cases. Civil cases standing in the way must be continued or the trial setting thereof must be delayed. Other criminal cases must be transferred to the colleagues of the district judge, thus disrupting their calendars also. Extra potential jurors must be assembled; here a special order of over a hundred jurors were assembled at short notice and were waiting when the problem described in the opinion manifested itself. In addition, the consequences for the parties and counsel are significant. Preparation for the trial of a major criminal case is intensive and consuming of counsel's time. Hundreds or thousands of exhibits must be reviewed, listed, and their admissibility prepared. Witnesses must be interviewed and subpoenaed, and cross-examination must be prepared for foreseeable opposing witnesses. Trial memoranda, motions, and jury instructions must be prepared. If the case must be continued at the last moment, significant resources are substantially lost, and preparation must be done in large part again when the case again is set for trial.

These consequences are significant in the administration of justice. They are to be avoided if at all possible.

The district judge here was faced with two alternatives, each of which was undesirable. One was to continue the case which he thought necessary to allow preparation for cross-examination of the new witness necessary because thousands of hours of tape recordings needed to be collated and organized. In addition, the district judge believed it necessary to allow a substitution of counsel for one of the defendants, also requiring a continuance. The other alternative was to say that the government could not call its newly acquired witness, a witness the government had been prepared to do without.

The *Gatto* case lays down an inflexible rule—the government has an absolute right to call its lately acquired witness whatever the consequences to the administration of justice in other respects. To be sure, preventing a witness from being called is an undesirable step, but so was continuing the trial with all of its consequences. There should be no absolute rule; the trial judge should have discretion to consider all of the factors and make his or her best judgment as to which undesirable alternative least impacts the interests of the administration of justice.

The *Gatto* case attributes as its reason for acceptance of the government's absolutist position the doctrine of separation of powers, pointing out that the judicial branch should not be able to tell the executive branch what witnesses to call (*Gatto, supra*, at pg. 1046). In my opinion, this is not tenable; the judicial branch of government should be in charge of what steps are necessary to protect the interests of justice in a trial situation like this, and there should be no absolute rights when the interests of justice are harmed no matter which course is taken. If the doctrine of separation of powers applies at all, it should work in reverse; the executive branch must operate in such a way that the judicial branch may function in an effective manner. The trial judge should be able to weigh and decide which undesirable solution is least undesirable. The experienced trial judge here, obviously with much soul searching, made his "call," and it is supported by the considerations outlined above. But for the government's "absolute" right to call a witness whatever the other consequences to the administration of justice, this discretionary decision would not be interfered with.

One other procedural point should be noted. The motions panel of this court called

off the trial as jury selection was going on. While our decision vindicates that ruling by reason of the controlling authority, we should be slow to act where a stay order brings about the very evil sought to be avoided.

I concur by reason of binding precedent.