**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellant,*

v.

W. R. GRACE; ALAN R. STRINGER;
HENRY A. ESCHENBACH; JACK W.
WOLTER; J. MCCAIG; ROBERT J.
BETTACCHI; O. MARIO FAVORITO;
ROBERT C. WALSH,
           *Defendants-Appellees.*

No. 06-30192

D.C. No.
CR-05-00007-DWM

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, Chief District Judge, Presiding

Argued and Submitted
July 26, 2006—Seattle, Washington

Filed July 12, 2007

Before: J. Clifford Wallace, Kim McLane Wardlaw and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Fisher;
Concurrence by Judge Wallace

8305

## COUNSEL

Sue Ellen Woolridge, Assistant Attorney General, William W. Mercer, United States Attorney, Kris McLean, Assistant United States Attorney, Todd S. Aagaard, Kevin M. Cassidy, Allen M. Brabender (argued), Attorneys, United States Department of Justice, Environmental and Natural Resources Division, Washington, D.C., for the plaintiff-appellant.

Laurence A Urgenson, William B. Jacobson, Tyler D. Mace, Michael D. Shumsky (argued), Kirkland & Ellis LLP, Washington, D.C., for the defendants-appellees.

## OPINION

FISHER, Circuit Judge:

This appeal presents us with two questions. First, we must decide whether the government has adequately complied with the certification requirements of 18 U.S.C. § 3731, which gives us jurisdiction to hear this interlocutory appeal. Second, assuming we have jurisdiction, we must decide whether the district court exceeded its authority in issuing pretrial orders

that: (1) required the government to submit a pretrial list of witnesses and later precluded the government from using any unlisted witnesses in its case-in-chief; and (2) precluded the government's identified expert witnesses from relying on documents not disclosed prior to a disclosure cutoff date. We hold that the government has now complied with its certification requirements, and that in some respects the district court's pretrial orders were improper.

## FACTUAL AND PROCEDURAL BACKGROUND

W.R. Grace & Company mined and processed vermiculite ore outside of Libby, Montana from the early 1960s until the early 1990s. In February 2005, the United States obtained a 49-page, 10-count indictment against Grace and several of its officers, alleging that Grace committed criminal acts related to improper disposal of asbestos-contaminated vermiculite spanning 26 years and creating at least 1,200 victims and 230 potential witnesses.

In March 2005, after considering the parties' pretrial conference submissions, the district court entered a case management order setting a "firm" trial date of September 11, 2006 and establishing various pretrial discovery obligations and deadlines. Relevant here, the March 2005 order specified an April 29, 2005 deadline for the government to produce all discoverable materials specified in Rule 16(a) of the Federal Rules of Criminal Procedure as well as those the government had identified in an earlier statement of proposed discovery disclosures; a May 27, 2005 deadline for the government's preliminary list of intended witnesses and exhibits; and a September 30, 2005 deadline — almost a year before trial — for a "finalized list of witnesses and trial exhibits, including finalized disclosure of prosecution's expert witnesses." The government did not object to the court's order.

On September 30, the government notified the district court that it had given the defendants (hereinafter, collectively

"Grace") "the government's final witness list and final exhibit list," but noted that it would "continue to investigate this case through close of all evidence at trial" and therefore "reserve[d the] right to update its witness list and exhibit list through the close of all evidence at trial." In its March 2005 submission to the court, the government had noted the same reservation of right. The government's qualified disclosure prompted concerns on Grace's part (apparently aggravating a history of discovery disputes between the parties), leading the district court to hold a status conference in early December 2005.

The court found the government's argument in support of its open-ended qualifier to its "final" list troublesome. It noted that the government's list of witnesses had gone from an estimated 60 to 80 in March to some 233 in September, and that the government had initially stated it would have been prepared to try the case in September 2005, some "three months ago. It cannot now credibly claim that it is necessary to continue adding witnesses to an already unwieldy list." Accordingly, the district court issued an order on December 5 (the "December 2005 order") limiting the government's presentation of witnesses at trial "to those witnesses that have been disclosed as of the filing of this Order." Addressing Grace's complaints about the adequacy of the government's expert witness disclosures, the court also limited the government's experts' reliance on reports and studies to those that "are contained in the discovery produced to date." On February 17, 2006, the district court denied the government's motion for reconsideration but clarified that the government could call unlisted witnesses and use other evidence if necessary for rebuttal (the "February 2006 order").

The December 2005 and February 2006 orders are the subject of this interlocutory appeal. The government contends that the district court erred in limiting the government's evidence by precluding witnesses and studies it had not disclosed as of December 5, 2005. Grace primarily argues that we do not have jurisdiction to hear this interlocutory appeal because

the government has not satisfied its certification burden under 18 U.S.C. § 3731; alternatively, it argues that the district court's orders were plainly within the court's discretion. When the district court partially dismissed some of the indictment counts after this appeal was filed, *see United States v. W.R. Grace*, 429 F. Supp. 2d 1207 (D. Mont. 2006), we requested that the parties submit supplemental briefs discussing whether the excluded evidence would be "substantial proof of a fact material" to the remaining portions of the indictment for purposes of § 3731.[1] Specifically, we asked the parties to address whether the excluded evidence was such that " 'a reasonable trier of fact could find the evidence persuasive in establishing the proposition for which the government seeks to admit it[.]' *United States v. Adrian*, 978 F.2d 486, 491 (9th Cir. 1992)."

## DISCUSSION

## I.   Jurisdiction

[1] Title 18 U.S.C. § 3731 provides in relevant part:

> *An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence* or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indict-

---

[1]Based on the five-year statute of limitations applicable to the knowing endangerment provision of the Clean Air Act, the district court granted Grace's motion to dismiss "as to all Defendants with regard to the criminal conduct charged in Counts II through IV which was complete as of November 3, 1999." *Grace*, 429 F. Supp. 2d at 1245. The government has filed a separate interlocutory appeal regarding the district court's partial dismissal. We do not address the propriety of that dismissal, but because we conclude that the excluded evidence is material regardless of whether the dismissal survives appeal, we do not defer resolution of the present appeal.

ment or information, *if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding*.

(Emphasis added). Section 3731 also states that it "shall be liberally construed to effectuate its purposes." We have explained that the United States' "right [under § 3731] to appeal a district court's order suppressing evidence is conditional." *United States v. Loud Hawk*, 628 F.2d 1139, 1150 (9th Cir. 1979) (en banc); *see also Adrian*, 978 F.2d at 490 (reaffirming *Loud Hawk* and noting that the government has to satisfy certain conditions before being entitled to appeal under § 3731). "First, the appeal is not available if the defendant has been put in jeopardy. Second, the appeal must not be taken for purpose of delay. Third, the evidence suppressed must be substantial proof of a fact material in the proceeding." *Loud Hawk*, 628 F.2d at 1150.

**[2]** The parties agree that the defendants have not been put in jeopardy and that the appeal is not for the purpose of delay. The only matter in dispute is whether the excluded evidence is substantial proof of a material fact. The government insists that the U.S. Attorney's mere certification that the evidence is substantial proof of a material fact is sufficient to establish our jurisdiction. However, we "require[ ] more than the prosecutor's bare certification that the conditions enumerated in section 3731 exist." *Adrian*, 978 F.2d at 490.[2] Rather, "before we may assume jurisdiction, the government must *demonstrate* that the evidence . . . [is] substantial proof of a fact material to the prosecution." *Id.* at 491 (emphasis added); *see*

---

[2]Unlike in *Loud Hawk* and *Adrian*, here the district court did not find that the excluded evidence was immaterial. *See Loud Hawk*, 628 F.2d at 1150; *Adrian*, 978 F.2d at 490. There is no suggestion in either case that in the absence of such a district court finding, the government's certification alone is sufficient.

*also id.* at 490 (rejecting government's argument that § 3731 "permits an appeal whenever the government certifies to the district court that the evidence is 'substantial proof of a material fact,' regardless of the truth of that certification"); *see also Loud Hawk*, 628 F.2d at 1150 (holding § 3731 not satisfied as to certain counts notwithstanding "the government's protests to the contrary" because substantial proof of material fact condition had not been met).

**[3]** Consequently, in order to satisfy its relatively modest burden, the government must show that the evidence "makes a considerable contribution to cognition of a fact relevant to resolution of the case." *Adrian*, 978 F.2d at 491. In determining whether the government has made the necessary showing:

> we must interpret the [substantial proof] requirement . . . in a way which facilitates rather than hinders the government's ability to seek review in this court. Thus, we will find the government to have satisfied this additional jurisdictional requirement if, assuming the evidence would be admissible, a reasonable trier of fact could find the evidence persuasive in establishing the proposition for which the government seeks to admit it.

*Id.*; *see also United States v. Poulsen*, 41 F.3d 1330, 1334 (9th Cir. 1994).

### A.   Review Under "Substantial Proof of a Material Fact" Standard

The question of jurisdiction has bedeviled the government's attempted appeal in this case, as the government has resisted having to go beyond a bare certification to provide any useful degree of specificity that would help us (and Grace) evaluate the materiality of the excluded evidence. Nonetheless, having given the government the chance to support its certification with substance, we now address its com-

pliance with § 3731 in light of the parties' supplemental briefing.

**[4]** Preliminarily, we first decline Grace's suggestion that we dismiss this appeal based on the government's apparent reluctance to comply with our certification requirements. "The failure [timely] to file the certificate does not oust our jurisdiction but does require us to decide whether to exercise our discretion under F. R. App. P. 3(a) to dismiss the appeal." *United States v. Gantt*, 194 F.3d 987, 997 (9th Cir. 1999); *see also United States v. Becker*, 929 F.2d 442, 444-45 (9th Cir. 1991) (allowing government to file a late § 3731 certificate as an exercise of discretion). As in *Gantt* and *Becker*, we exercise our discretion to excuse the government's late showing given that it has now been forthcoming, and there is no indication that Grace will be prejudiced by our consideration of the government's appeal. *See Gantt*, 194 F.3d at 997 ("[T]hough the government's oversight has led to a considerable waste of judicial resources, the defendant has suffered no prejudice.").

Second, we reject the government's contention in its supplemental brief that it "need only show that one excluded witness *or* one excluded document or study the government's experts intend to reply [*sic*] upon at trial is 'substantial proof' of a fact material to the Superseding Indictment." (Emphasis in original). The only support the government cites for this proposition is our earlier statement that the court "must interpret the requirement that the evidence suppressed be 'substantial proof of a fact material' in a way which facilitates rather than hinders the government's ability to seek review in this court." *Adrian*, 978 F.2d at 491.

**[5]** The materiality of one item of evidence does not necessarily justify our jurisdiction to review all of the excluded evidence. The purpose of the materiality requirement is "to force federal prosecutors to consider whether the appeal is taken for a proper purpose before they force a defendant to relitigate the

evidentiary issue." *Gantt*, 194 F.3d at 997; *see also id.* ("Unfortunately, some government attorneys from time to time treat the § 3731 certification requirement as a mere formality . . . ."). Allowing a single item of evidence to carry the burden for what could be a wide ranging review of a district court's evidentiary rulings would not only undercut the government's obligation to be selective in its invocation of interlocutory appeal, but also invite the appellate court into refereeing what is in most cases an area of dispute committed to the discretion of the district court. Thus, we hold that each type of excluded evidence must meet the "liberally construed" § 3731 requirement that it be substantial proof of a material fact in order to be the subject of a proper interlocutory appeal.

Third, contrary to Grace's argument, excluded evidence need not be "persuasive" as to the ultimate charge but rather only "persuasive in establishing the *proposition* for which the government seeks to admit it." *Adrian*, 978 F.2d at 491 (emphasis added). In keeping with the liberal interpretation of § 3731, so long as the proposition is relevant to the government's case, that will suffice.

Finally, we make no determinations regarding admissibility of any of the apparently excluded evidence, but rather leave that issue for the district court. *See id.* (emphasizing that the court was only "assuming that the evidence would be admissible" in its § 3731 analysis).

### B. *Excluded Evidence*

[6] The government in its supplemental briefing to us identifies nine witnesses and three studies that it concludes would be excluded from its case-in-chief under the district court's December 2005 and February 2006 orders and that it argues meet § 3731's materiality standard, justifying this interlocutory appeal.[3] According to the government, some of this

---

[3]The government does not explain why it could not use any of this evidence for rebuttal, as permitted by the February 2006 order. Grace does not dispute that the evidence would be excluded under both orders, however.

newly disclosed evidence "differ[s] in some extent from the evidence previously disclosed to [this] Court," but asserts that the updating is due to the "United States's continuous investigation and refinement of its case that is made necessary" by various circumstances, including the complexity of the case and evolving medical information about asbestos-related diseases. Grace objects to the government's "shifting, post-hoc attempts to justify review . . . [and] its continued failure to take this Court's § 3731 jurisprudence seriously." Nonetheless, because the government, albeit belatedly and reluctantly, has complied with our request to provide more specific information, we exercise our discretion to consider the proffered evidence and the explanation of how its materiality satisfies the government's § 3731 certification requirement. *See Gantt,* 194 F.3d at 997 (opting to consider defective certification where government corrected its mistake and showed "it does take the certification requirements of § 3731 seriously").

### C.   *Materiality of the Excluded Evidence*

The government argues that the nine witnesses and three studies are substantial proof of a fact material to the remaining charges of the indictment. Mindful of § 3731's mandate that the certification requirement be construed liberally in order to allow the government to appeal excluded evidence, we do not require extensive explanations of how the evidence fits into the government's case, but only enough specificity to evaluate the materiality of the evidence to the issues in the case. We conclude that the government has now made a showing sufficient to establish our jurisdiction over this interlocutory appeal. "[A] reasonable trier of fact could find the evidence persuasive in establishing the proposition for which the government seeks to admit it." *Adrian*, 978 F.2d at 491.

### 1.   *Witnesses*

The government asserts that five of the witnesses will testify to injuries that will prove that Grace knew of the danger

posed by exposure to asbestos-contaminated vermiculite. We agree that this testimony is material to the indictment, even as limited to post-1999 conduct. Even if the testimony relates to periods for which Grace cannot be held criminally liable under the statute of limitations, knowledge does not evaporate, and thus the testimony appears relevant. The government may therefore appeal the exclusion of these witnesses' testimony.

Grace does not contest the materiality of the remaining witnesses' testimony, which relates to Grace's motive during the alleged conspiracy and Grace's alleged obstruction of the EPA's investigation.

### 2.  Studies Experts Will Rely Upon

The three apparently excludable documents the government identifies are studies that it expects various expert witnesses to rely upon at trial. The government explains that the studies: (1) show that exposure to lower levels of asbestos-contaminated vermiculite than were present in the Libby mines caused asbestos-related diseases; (2) examine the exposure to airborne asbestos fibers in Libby, Montana during various activities such as sweeping; and (3) differentiate between those forms of asbestos that are listed as hazardous and those that are not. We agree that these studies could be substantial proof of a material fact to the remaining charges.

**[7]** In sum, the government has supplemented its initial conclusory certification with enough specificity to demonstrate the materiality of the proffered witnesses and studies to support our jurisdiction under § 3731. We therefore turn to the question of whether the district court could properly exclude such evidence.

## II.   Merits

We review de novo the scope of the district court's authority to order discovery under Rule 16 of the Federal Rules of

Criminal Procedure. *See United States v. Hicks*, 103 F.3d 837, 840 (9th Cir. 1996).

### A. Nonexpert Witnesses

### 1. Authority to Order Disclosure of Nonexpert Witnesses

The district court's March 15, 2005 case management order did not cite any authority for its requirement that the government produce a "finalized list of witnesses and trial exhibits" by September 30, 2005. "As a threshold matter, a court may not exercise any supervisory power absent a clear basis in fact and law for doing so." *United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir. 1985) (internal quotation marks and citation omitted). Presumably, the court was relying on its authority under Rule 16(d) as well as its authority to manage its docket. *See Atchison, Topeka and Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998) (holding that "[d]istrict courts have inherent power to control their dockets" as long as its exercise is not inconsistent with a rule or statute) (citation and internal quotation marks omitted).

[8] Under Rule 16 of the Federal Rules of Criminal Procedure, the government (and the defendant) have certain pretrial disclosure obligations as to expert witnesses that we shall address separately, below. With respect to *nonexpert* witnesses, however, we have explicitly held that a district court has no Rule 16 authority to order either side to produce a pretrial list of expected witnesses, final or otherwise. "A district court that orders the Government and the defendant to exchange witness lists and summaries of anticipated witness testimony in advance of trial has exceeded its authority under Rule 16 of the Federal Rules of Criminal Procedure and has committed error." *Hicks*, 103 F.3d at 841. *Hicks* so concluded after comparing Rule 16's provisions "permit[ting] the discovery of a party's intent to rely on expert opinion testimony, a summary of what the testimony will consist of, and the bases of the testimony," with the absence of any provision

permitting the discovery of any other types of witnesses. "The advisory notes make clear . . . that these subdivisions [governing discovery of expert witness testimony] do not apply to witnesses who may offer lay opinion testimony or to summary witnesses who testify under Federal Rule of Evidence 1006. Of course, these subdivisions also do not, by their terms, extend to other witnesses that the Government or the defendant may call at trial." *Id.* (internal citation omitted). We thus reiterated that we cannot " 'sanction a practice which would require a defendant to supply information beyond the provisions of Rule 16,' " and made clear that a district court that ordered the pretrial disclosure of nonexpert witnesses — by the defendant or the government — had exceeded its authority and committed error. *Id.* (quoting *United States v. Seymour*, 576 F.2d 1345, 1349 (9th Cir. 1978)).[4]

[9] Although this rule obviously cramps the district court's ability to manage a complex case, *Hicks'* holding is well supported by the legislative history of Rule 16. In 1975, the Supreme Court proposed that Rule 16 be amended to "enlarge[ ] the scope of defendant's discovery to include . . . a list of the names and addresses . . . of all witnesses the prosecution intends to call during its case-in-chief." *See* 1975 Enactment, reprinted in Federal Criminal Code and Rules, at 104 (West 2005). The Rules Advisory Committee "endorse[d] the principle that witness lists are discoverable" and attempted to "strike a balance between the narrow provisions of existing law and the broad provisions of the proposed rule" by proposing a slightly different rule that "witness lists need not be turned over until 3 days before trial" and gave the court the discretion to "modify the terms of discovery" to require dis-

---

[4]Of course, the government may be required to disclose witnesses or other evidence for other reasons unconnected with a district court's discovery orders, such as exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963). We express no opinion as to whether the government here may have violated Grace's constitutional rights under *Brady* and its progeny.

closure of the witness lists earlier than 3 days before trial, or "[to] permit a party not to disclose the identity of a witness before trial." *Id.* at 105. The House version of the bill similarly provided "that each party, the government and the defendant, may discover the names and addresses of the other party's witnesses 3 days before trial." *Id.* at 107. However, the "Senate version of the bill *eliminate[d] these provisions, thereby making the names and addresses of a party's witnesses nondiscoverable.* The Conference adopt[ed] the Senate version." *Id.* (emphasis added). As *Hicks* observed, the Advisory Committee notes reflect the reason the Conference adopted the Senate's version of the rule:

> A majority of the Conferees believe it is not in the interest of the effective administration of criminal justice to require that the government or the defendant be forced to reveal the names and addresses of its witnesses before trial. Discouragement of witnesses and improper contact directed at influencing their testimony, were deemed paramount concerns in the formulation of this policy.

*Id.* at 107; *see Hicks*, 103 F.3d at 841. Thus the mandatory regime of witness discovery the district court here attempted to impose was specifically rejected — after considerable discussion and over the recommendation of the House and the Advisory Committee — in the final version of Rule 16. Given this explicit rejection of requiring pretrial disclosure of witness lists, the district court cannot rely on its inherent authority to control its own docket to do what Rule 16 does not permit — no matter how well-intentioned and understandable in this complex litigation.

Grace's suggestion that *Hicks* is limited to a *defendant's* right not to share witness lists is belied by the foregoing quotations themselves and by the opinion's careful exploration of the limitations on discovery embodied in Rule 16. The 1975 Conference Committee notes refer specifically to the Judicial

Conferees' belief that neither "*the government* or the defendant [should] be forced to reveal the names and addresses of its witnesses before trial." 1975 Enactment, reprinted in Federal Criminal Code and Rules, at 107 (West 2005) (emphasis added); *see also Hicks*, 103 F.3d at 841.

Grace relies on *United States v. Baker*, 10 F.3d 1374 (9th Cir. 1993), for the proposition that in cases of this complexity, the district court must have the authority to require a binding pretrial witness list and to exclude any undisclosed witnesses. In *Baker*, in the context of a massive "mega-trial," we noted:

> when the district court requires the prosecution to provide a pretrial witness list, it need not allow the government, as it did here, to present nearly 100 witnesses not on that list. . . . While these decisions are within the district court's discretion, we believe that stricter adherence to pretrial commitments will guard against the prosecution's underestimating the length of its case and will require more thorough and accurate trial preparation.

*Id.* at 1392. *Baker*, however, predated *Hicks* by several years and, unlike *Hicks*, was not addressing the court's authority in light of Rule 16 and its legislative history. Rather, the issue was whether the district court abused its discretion in denying the defendant's motion for severance of a trial, and we were setting forth general policy considerations the district court should be mindful of when handling large-scale trials. *See id.* at 1389. Although the district court in that case had required the government to produce a witness list, hence the reference to such a list in the passage quoted above, we explicitly noted that "the government is not required to furnish the defendant with a list of witnesses in a non-capital case . . . ." *Id*. at 1392 n.4.[5]

---

[5]The reference in *Baker* to the district court's discretion to exclude almost 100 witnesses not on a pretrial witness list does suggest that if the

**[10]** Accordingly, we conclude that under *Hicks* and Rule 16, the district court exceeded its authority to the extent that it ordered the government to disclose a pretrial list of its non-expert witnesses.

*2. Preclusion of Undisclosed Witnesses from the Government's Case-in-Chief*

**[11]** A district court has the power to exclude the government's evidence as a sanction, but only for a "violation of any constitutional provision, federal statute, specific discovery order, or any other recognized right." *United States v. Schwartz*, 857 F.2d 655, 658 (9th Cir. 1988) (internal quotation marks omitted); *see Gatto*, 763 F.2d at 1046 (holding that "the separation-of-powers principle imposes significant limits" on the district court's use of its supervisory powers to exclude government's evidence); Fed. R. Crim. P. 16(d)(2)(C). Here, the district court was legitimately concerned with giving Grace adequate opportunity and information to prepare its defense. A "generalized concern" with a defendant's ability to

---

government accedes to an order requiring such a list, its agreement may be enforced by an exclusionary order. Even if so, we do not think the preclusionary orders here have been justified on the record before us. As noted above, in March 2005, in the notice upon which the district court based its case management order requiring disclosure of a "final" witness list, the government specifically stated that it "reserve[d] its right to supplement its witness list . . . through the close of all evidence at trial." The government repeated this reservation when making disclosures in compliance with the district court's order. Thus, at no time did the government agree to provide an unchangeable witness list.

Another possibility is that *Baker* had in mind the district court's authority to preclude testimony under Federal Rule of Evidence 403 when it finds the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As this option is not before us, we express no opinion on the propriety of excluding witnesses from the government's case-in-chief under Rule 403.

prepare is not a sufficient basis upon which to exclude evidence, however. *See Schwartz*, 857 F.2d at 658.

**[12]** It is quite clear that the court was frustrated by the government's apparent inability to bring focus and closure to its case preparation. However, in entering the December 2005 and February 2006 orders limiting the government's presentation of nonexpert witnesses in its case-in-chief to those already disclosed, the district court did not explicitly find the government to be in violation of any constitutional provision or federal statute. Because the district court lacked the authority to order the government to disclose its nonexpert witnesses before trial, the government's failure to produce a finalized list of such witnesses by December 5, 2005 cannot serve as the basis for precluding such undisclosed witnesses from the government's case-in-chief.

Even had the district court found that the government violated a constitutional provision, a federal statute or a legitimate discovery order, exclusion is not an automatic remedy. *See United States v. Figueroa-Lopez*, 125 F.3d 1241, 1247 (9th Cir. 1997) (addressing Rule 16). Exclusion can be "a too harsh remedy" for discovery violations and generally is "an appropriate remedy for a discovery rule violation only where 'the omission was willful and motivated by a desire to obtain a tactical advantage.' " *United States v. Finley*, 301 F.3d 1000, 1018 (9th Cir. 2002) (quoting *Taylor v. Illinois*, 484 U.S. 400, 415 (1988)) (emphasis removed).[6]

This is certainly so in the case of an order that broadly precludes evidence, one we would expect to be accompanied by findings — not present here — of government misconduct and prejudice to the defendants. *See Schwartz*, 857 F.2d. at

---

[6]We say "generally" because, as the Supreme Court in *Taylor* emphasized, "it is neither necessary nor appropriate for us to attempt to draft a comprehensive set of standards to guide the exercise of discretion in every possible case." 484 U.S. at 414.

659 (noting that the government had not violated any discovery orders or behaved duplicitously); *see also United States v. Gonzales*, 164 F.3d 1285, 1292 (10th Cir. 1999) (holding that "[i]n selecting a proper [discovery] sanction, a court should typically consider (1) the reasons the government delayed producing requested materials, including whether the government acted in bad faith; (2) the extent of prejudice to defendant as a result of the delay; and (3) the feasibility of curing the prejudice with a continuance").

**[13]** On the record before us, therefore, we cannot justify the blanket exclusion from the government's case-in-chief of undisclosed nonexpert witnesses as the orders of December 2005 and February 2006 provide. We therefore reverse these orders insofar as they preclude witnesses the government had failed to identify as of December 5, 2005.

## B.    Expert Witnesses and Related Documents

### 1.    Authority to Order Disclosure

**[14]** Although the government cannot be compelled to disclose its nonexpert witnesses before trial, Rule 16 establishes a different regime for expert witnesses and certain categories of documents and scientific tests. Relevant here, upon a defendant's request the government is required to disclose the expert witnesses it intends to use in its case-in-chief, as well as a summary of these experts' expected testimony and the "bases and reasons for [their] opinions."**[7]** Fed. R. Crim. P. 16(a)(1)(G); *see also* 16(a)(1)(E) (documents within the government's possession, custody or control material to the defense or that the government intends to use in its case-in-chief), 16(a)(1)(F) (scientific reports). Once triggered by the defendant, these discovery obligations are reciprocal. *See* Fed.

---

**[7]**The 1993 amendments to Rule 16 introduced this provision as Rule 16(a)(1)(E); the 2002 amendments relettered it as Rule 16(a)(1)(G). *See* Pub. L. No. 107-273 § 11019, 116 Stat. 1758, 1825.

R. Crim. P. 16(b)(1)(A)-(C). Although Rule 16(a)(1)(G) does not specify a timeline for such disclosures, the advisory committee notes state the expectation "that the parties will make their requests and disclosures in a timely fashion." Thus, unlike the disclosure of nonexpert witnesses, once the parties have triggered Rule 16(a)(1)(G)'s reciprocal disclosure requirements, the district court has the authority to regulate such disclosures under Rule 16(d)(2), which gives the court wide latitude to ensure compliance with Rule 16 discovery obligations. Because Rule 16(a)(1)(G) specifically refers to the disclosure of "the bases and reasons" for expert witnesses' opinions, the district court's authority also includes the power to regulate disclosure of documents upon which a party's expert witnesses will rely during its case-in-chief. Accordingly, we hold that the district court here acted within its authority in requiring the government to disclose in advance of trial a list of its intended expert witnesses and the documents upon which those expert witnesses would rely.[8]

## 2. Preclusion of Expert Witnesses

The district court's December 2005 and February 2006 orders limiting the government's case-in-chief to "those witnesses disclosed as of" December 5, 2005 appear to preclude the addition of expert as well as nonexpert witnesses (other than as rebuttal witnesses). Rule 16(d)(2) expressly authorizes as one sanction for noncompliance the exclusion of undisclosed evidence. Fed. R. Crim. P. 16(d)(2)(C).[9] Nonetheless,

---

[8]The court's authority must be tempered on a showing of good cause, however, by considering the need of experts to update their data before trial (and where appropriate after trial has commenced) and the need of the parties to add experts and data to respond to the other parties' experts. Moreover, where as here the trial date is postponed, the district court should also consider the need to extend deadlines.

[9]"If a party fails to comply with this rule, the court may: (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) *prohibit that party from introducing the undisclosed evidence*; or (D) enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2) (emphasis added).

as with the exclusion of nonexpert witnesses, completely precluding use of an expert witness is an extreme sanction. *See Finley*, 301 F.3d at 1018 (addressing the exclusion of an expert witness' testimony as a sanction for the defendant's alleged failure to give proper notice under Rule 16(b)(1)(C)). As we held in *Finley*, "assuming there was an omission of some sort [with respect to the mandated disclosures regarding expert witnesses], it was not willfully done to gain a tactical advantage" and thus the "severe sanction of total exclusion of the testimony was disproportionate to the alleged harm." *Id.*

**[15]** Here, in discussing the government's compliance with the court's discovery orders, the district court observed that the government had failed to comply fully with certain discovery deadlines and that it was the court's "impression that the delay is due largely to the government's practice of adopting aggressive legal positions in defense of non-disclosure and waiting for an order of this Court to sort out the dispute." As a remedy, it imposed a monitoring requirement on the government's compliance. Turning to alleged shortcomings in the government's expert disclosures, it required the government to supplement those disclosures with specific information about the bases for the experts' testimony. The court did not, however, clearly find that the government *willfully* defied any of its expert disclosure obligations in order to gain a tactical advantage. The district court thus has not yet articulated a basis on which it could impose the "severe sanction" of preemptively excluding any additional expert witnesses as part of the government's case-in-chief.

On the other hand, the government has not identified any expert witness it believes is foreclosed by the court's December 2005 and February 2006 orders that it wishes to add at this late date. Should the government seek leave to add such a witness, we leave it to the district court to address the request in accordance with the principles we have set forth above.

### 3.  *Preclusion of New Studies*

The government does express concern that under the December 2005 and February 2006 orders, its previously identified experts will not be able to rely on three scientific studies dealing with asbestos-related exposure levels and diseases because these studies were not disclosed prior to December 5, 2005. To the extent that the district court's orders would preclude these studies because the government committed a discovery violation by failing to disclose them earlier, the orders currently lack the proper foundation for such a sanction. As with the preclusion of expert witnesses, the district court has not made a finding that the government willfully failed to disclose these studies earlier in order to gain a tactical advantage. *See Finley*, 301 F.3d at 1018. On the other hand, there is a difference between restricting what an expert may introduce in support of his testimony and excluding his testimony altogether, as *Finley* recognizes. *See id.* at 1018 (noting that "[t]he severe sanction of *total* exclusion of the testimony was disproportionate to the alleged harm") (emphasis added). Thus, the district court may be able to articulate legitimate reasons to restrict the use of the studies when it addresses the specifics of the government's failure to disclose the studies earlier.

**[16]** Whether there is any basis for exclusion of these documents is unclear on the record before us. It appears these studies were not in existence — at least in their final form — until after December 2005; all of the studies were "finalized" or published after the disclosure deadline imposed by the district court. Because the government has not yet presented these studies to the district court, the court has not yet had a chance to determine whether there is a proper basis for exclusion, or — even if there is such a basis — whether it would allow the studies' use as a matter of discretion. We therefore remand the question to the district court for resolution.

## III.   Conclusion

In sum, the government has now satisfied its burden under 18 U.S.C. § 3731 to certify the materiality of the apparently excluded evidence, thereby justifying our jurisdiction over this interlocutory appeal. The district court exceeded its authority by ordering the government to produce a pretrial list of nonexpert witnesses, but acted within its authority by setting deadlines for the disclosure of expert witnesses the government intended to present and studies the government's expert witnesses intended to rely upon during the government's case-in-chief. Before the district court can exclude a witness' testimony for a pretrial disclosure violation — either directly or by precluding the evidentiary basis for the witness' testimony — the court must find that the omission was willful and motivated by a desire to obtain a tactical advantage.

We are sympathetic to the district court's attempts to manage this large and complex criminal trial. We therefore emphasize that we do not decide whether circumstances beyond those we have addressed here may develop that would justify excluding or limiting testimony or documents — either as a sanction or as an evidentiary matter. We remand to the district court for proceedings not inconsistent with this opinion.

**REVERSED and REMANDED.**

---

WALLACE, Circuit Judge, concurring:

I agree that the government has complied with its certification requirements under our present case law, and agree fully with the disposition. I write separately because I believe that our cases relating to the government's certification requirements under 18 U.S.C. § 3731 were wrongly decided and should be reviewed en banc.

To establish appellate jurisdiction, our case law unaccountably "require[s] more than the prosecutor's bare certification that the conditions enumerated in section 3731 exist." *United States v. Adrian*, 978 F.2d 486, 490 (9th Cir. 1992). The standard to be met by the government is as follows: "assuming that the evidence would be admissible, a reasonable trier of fact could find the evidence persuasive in establishing the proposition for which the government seeks to admit it." *Id.* at 491. This requirement is directly contrary to the language and aims of the statute and conflicts with the decisions of every other circuit to have expressed an opinion on the issue.

The relevant part of section 3731 states:

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, *if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding*.

18 U.S.C. § 3731 (emphasis added). The statute also tells us that its provisions "shall be liberally construed to effectuate its purposes." *Id.*

As a starting point, a plain reading of the statute indicates that, contrary to our cases, mere executive certification is sufficient for appellate jurisdiction. As the Eighth Circuit has observed, "[t]he second and third requirements . . . share the common modifying phrase, 'if the United States attorney certifies to the district court.' The syntax implies that executive certification establishes both lack of delay and materiality." *United States v. Johnson*, 228 F.3d 920, 923-24 (8th Cir.

2000) (citation omitted). "The United States Attorney's word is enough; the reviewing court does not consider the truth of the certification." *Gov't of the Virgin Islands v. Hodge*, 359 F.3d 312, 325 (3d Cir. 2004). Any other reading of the statute is implausible. Nowhere in the text of the statute is there mention of a requirement of anything more than the prosecutor's certification. Indeed, the imposition of such a requirement violates the admonition that the provisions of the statute be liberally construed.

The circumstances surrounding the enactment of the current form of section 3731 further demonstrate the error of our case law. Prior to the 1968 amendments to the statute, the government's ability to appeal pretrial decisions in criminal cases was far more limited. In *Di Bella v. United States*, the Supreme Court held that the government could not appeal from a post-indictment order suppressing evidence. 369 U.S. 121, 131 (1962). The Court stated that allowance of such a right of appeal "must be sought from Congress and not this Court." *Id.* (citation omitted).

The problem was clear. If the district court improperly suppressed evidence, the right of the government to appeal was frustrated. If the defendant were convicted, the government had no need to appeal. If the defendant were acquitted, double jeopardy prevented review. Thus, district court suppression orders were essentially unreviewable by government request.

After *Di Bella*, Congress amended section 3731 to allow for appeals from orders granting motions to suppress evidence. Pub. L. 90-351, 82 stat. 197 (1968). Thereafter, in 1971, Congress expanded the government's right of appeal to include all orders suppressing or excluding evidence in a criminal proceeding, and added the provision requiring that the statute be "liberally construed." Pub. L. 91-644, 84 Stat. 1890. The Senate Report on the amendment explains its purpose:

The amended Criminal Appeal Act is intended to be liberally construed so as to effectuate its purpose of permitting the Government to appeal . . . from all suppressions and exclusions of evidence in criminal proceedings, except those ordered during trial of an indictment or information. S. 3132 (the 1971 amendment) places on the face of section 3731 an explicit expression of this intent, in view of the restrictive judicial interpretations of congressional intent which have resulted from the histories of the earlier versions of section 3731 despite strong indications in the debate on the 1907 act that it should be broadly interpreted.

S. Rep. No. 91-1296, 91st Cong., 2d Sess. 18-19 (1970); *see also In the Matter of Grand Jury Empanelled*, 597 F.2d 851, 855-56 (3d Cir. 1979) (detailing history of section 3731).

The Supreme Court has also interpreted the statute and its history as granting the government a wide power of appeal. "[T]he legislative history [of the statute] makes it clear that Congress intended *to remove all statutory barriers* to Government appeals and to allow appeals *whenever the Constitution would permit*." *United States v. Wilson*, 420 U.S. 332, 337 (1975) (emphasis added). *Wilson*, which discusses the legislative history of section 3731 in some detail, goes so far as to conclude that "it seems *inescapable* that Congress was determined to avoid creating nonconstitutional bars to the Government's right to appeal. The District Court's order . . . is therefore appealable *unless the appeal is barred by the Constitution*." *Id.* at 339 (emphasis added).

The statute expresses Congress's intent to permit all constitutional government appeals from pretrial evidentiary rulings. *See Arizona v. Manypenny*, 451 U.S. 232, 243 n.18 (1981) ("By enacting the current version of 18 U.S.C. § 3731, Congress manifested an intent to remove all statutory barriers to a criminal appeal taken by the Federal Government" (citations

omitted)). There is not the slightest indication that the barrier created by our circuit is constitutionally based. Instead, we have created an unwarranted hurdle in violation of the language of the statute, its legislative history, and the specific dictate of the Supreme Court. Although I was on the en banc court in *United States v. Loud Hawk*, 628 F.2d 1139, 1150 (9th Cir. 1979) (en banc), and on the panel in *Adrian*, I am now convinced they were wrong on this issue. These cases should be reconsidered by our court en banc, and our ill-conceived limitations should be abandoned.