**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellant,*

v.

W. R. GRACE; ALAN R. STRINGER;
HENRY A. ESCHENBACH; JACK W.
WOLTER; WILLIAM J. MCCAIG;
ROBERT J. BETTACCHI; O. MARIO
FAVORITO; ROBERT C. WALSH,
        *Defendants-Appellees.*

No. 06-30192

D.C. No.
CR-05-00007-DWM

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, Chief District Judge, Presiding

Argued and Submitted En Banc
December 12, 2007—Pasadena, California

Filed May 15, 2008

Before: Alex Kozinski, Chief Judge, Harry Pregerson,
Stephen Reinhardt, Andrew J. Kleinfeld,
Michael Daly Hawkins, Susan P. Graber,
M. Margaret McKeown, Kim McLane Wardlaw,
Raymond C. Fisher, Carlos T. Bea and Milan D. Smith, Jr.,
Circuit Judges.

Opinion by Judge Fisher;
Concurrence by Judge Hawkins

**COUNSEL**

James C. Kilbourne (argued), Kevin M. Cassidy and Allen M. Brabender, Attorneys, United States Department of Justice, Washington, District of Columbia; William W. Mercer, United States Attorney; Kris A. McLean, Assistant United States Attorney; Ronald J. Tenpas, Acting Assistant Attorney General, for the plaintiff-appellant.

Christopher Landau, P.C. (argued), Laurence A. Urgenson, Tyler D. Mace and Michael D. Shumsky, Kirkland & Ellis LLP, Washington, District of Columbia; Stephen R. Brown, Charles E. McNeil and Kathleen L. DeSoto, Garlington Lohn & Robinson, PLLP, Missoula, Montana, for defendant-appellee W. R. Grace & Co.

Ronald F. Waterman, Gough, Shanahan, Johnson & Waterman, Helena, Montana; David S. Krakoff and Gary A. Winters, Mayer Brown LLP, Washington, District of Columbia, for defendant-appellee Henry A. Eschenbach.

Mike Milodragovich and W. Adam Duerk, Milodragovich, Dale, Steinbrenner & Binney, Missoula, Montana; Jeremy Maltby, O'Melveny & Myers LLP, Los Angeles, California, for defendant-appellee Jack W. Wolter.

Palmer Hoovestal, Hoovestal Law Firm, PLLC, Helena, Montana; Elizabeth Van Doren Gray, Sowell, Gray, Stepp & Laffitte, LLC, Columbia, South Carolina; William A. Coates, Roe Cassidy Coates & Price, PA, Greenville, South Carolina, for defendant-appellee William J. McCaig.

Brian Gallik, Goetz, Gallik & Baldwin, P.C., Bozeman, Montana; Thomas C. Frongillo, Weil, Gotshal & Manges LLP, Boston, Massachusetts; Vernon S. Broderick, Weil, Gotshal & Manges LLP, New York, New York, for defendant-appellee Robert J. Bettacchi.

C.J. Johnson, Kalkstein Law Firm, Missoula, Montana; Stephen A. Jonas and Robert Keefe, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, Massachusetts, for defendant-appellee O. Mario Favorito.

Catherine A. Laughner and Aimee M. Grmoljez, Browning Kaleczyc Berry & Hoven, P.C., Helena, Montana; Stephen R. Spivack, Bradley Arant Rose & White LLP, Washington, District of Columbia; David E. Roth, Bradley Arant Rose & White LLP, Birmingham, Alabama, for defendant-appellee Robert C. Walsh.

---

**OPINION**

FISHER, Circuit Judge:

We granted en banc review of this appeal by the government, brought pursuant to 18 U.S.C. § 3731, to resolve two questions. First, does a United States Attorney's simple certi-

fication under § 3731 that the government's interlocutory appeal in a pending criminal case is not taken for purpose of delay and that the evidence the district court suppressed or excluded is substantial proof of a fact material in the proceeding suffice to establish our jurisdiction to hear the interlocutory appeal? Second, if so, did the district court in this case have the authority to order pretrial disclosure by the government of its final list of witnesses and evidentiary documents and to exclude witnesses and evidence not timely disclosed in compliance with such orders?

First, we hold that the United States Attorney's bare certification regarding delay and materiality in accordance with the terms of § 3731 was sufficient to give us appellate jurisdiction to address the government's objections to the district court's orders. We therefore overrule our prior decisions to the extent that they conflict with our ruling today, including *United States v. Loud Hawk*, 628 F.2d 1139 (9th Cir. 1979) (en banc), and *United States v. Adrian*, 978 F.2d 486 (9th Cir. 1992). Second, we hold that the district court did have the authority to issue and enforce its pretrial orders compelling the government to disclose its witness list and did not abuse its discretion in doing so. We therefore also overrule *United States v. Hicks*, 103 F.3d 837 (9th Cir. 1996), to the extent that it purported to deny the district court such authority.

## OVERVIEW

W.R. Grace & Co. mined and processed vermiculite ore outside Libby, Montana, from the early 1960s until the early 1990s. On February 7, 2005, the United States indicted Grace and several of its officers on numerous charges alleging that they engaged in criminal acts during the course of Grace's mining operations, related to the improper disposal of asbestos-contaminated vermiculite. The district court, recognizing the magnitude of the case — with a relevant time period spanning nearly 30 years and potentially more than a thousand victims — held a pretrial case management confer-

ence in March 2005 and thereafter entered a case management order memorializing the results of the conference.

The March 2005 order established a "firm" trial date of September 11, 2006, and set forth a discovery schedule. In pertinent part, the schedule required the government to produce "all discoverable materials specified in Fed. R. Crim. P. 16(a)" by April 29, 2005, "a preliminary list of its intended witnesses and exhibits" by May 27, 2005, and a "finalized list of witnesses and trial exhibits, including [a] finalized disclosure of prosecution's expert witnesses" by September 30, 2005. Moreover, to the extent that the parties intended to engage expert witnesses at trial, the order required "full[ ] compl[iance] with the requirements of Rule 16(a)(1)(E) and Rule 16(b)(1)(C)," including that "expert reports . . . are complete, comprehensive, accurate, and tailored to the issues on which the expert is expected to testify." The government did not object to the district court's order, and subsequently made significant disclosures in compliance with it.

On September 30, 2005, the government notified the district court that it had produced for the defendants its "final witness list and final exhibit list," but stated that the government "reserve[d] its right to update its witness list and exhibit list through the close of all evidence at trial." The government's disclosure included more than 230 witnesses.

The defendants disputed the sufficiency of the government's disclosures. On November 23, 2005, the district court issued three orders pursuant to Federal Rule of Criminal Procedure 16, chiding the government for its "impermissibly narrow view of the obligations under *Brady*" and clarifying the materials the government was required to produce pursuant to Rule 16.

On December 2, 2005, the parties met with the district court for a status conference. At this conference, the discussion included the sufficiency of the prosecution's expert dis-

closures, its compliance with the previous discovery orders, and the defendants' concern about the growing size of the government's witness list. Shortly thereafter, the district court entered an order on December 5, 2005 ("the December 2005 order"), limiting the government's presentation of witnesses at trial "to those witnesses that have been disclosed as of the filing of this Order" and limiting the reports the government experts may rely upon to those "contained in the discovery produced to date or . . . currently subject to an order of this Court requiring production."

In response to government objections, the court on February 17, 2006 clarified that, if necessary for rebuttal, the government could call unlisted witnesses and use other evidence. The government then brought an interlocutory appeal under 18 U.S.C. § 3731, challenging the district court's pretrial orders — specifically the March 2005 case management order and the court's December 2005 and February 2006 enforcement orders (collectively, the "enforcement orders").

Section 3731 provides in part:

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney *certifies* to the district court *that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding*.

(Emphasis added.) Here, the United States Attorney for the District of Montana certified in the words of the statute that the government's interlocutory appeal "is not taken for purpose of delay and that the evidence excluded by the district

court's order described in [the] notice of appeal is substantial proof of a fact material in the proceeding ongoing before the district court." The government contends that its unembellished certification suffices to establish appellate jurisdiction. On the merits of its appeal, the government challenges the district court's authority to require or enforce a finalized pretrial list of witnesses and trial exhibits, and argues that, even if authorized, the enforcement orders were an abuse of the court's discretion. The defendants counter that the government's § 3731 certification did not adequately establish the materiality of the excluded evidence,[1] so we lack jurisdiction to hear the government's appeal; and, in any event, the district court acted within its authority.

Adhering to existing Ninth Circuit law, a three-judge panel of this court declined to accept the government's bare certification that simply recited the language of § 3731, and requested the parties to submit supplemental briefs discussing whether the excluded evidence was in fact "substantial proof of a fact material in the proceeding." *United States v. W.R. Grace*, 493 F.3d 1119, 1124 (9th Cir. 2007), *reh'g en banc granted*, 508 F.3d 882 (9th Cir. 2007). After receiving more specific information from the government about the nature and relevance of the excluded evidence, the panel concluded that the government's proffer, albeit belated, had satisfied its burden to demonstrate materiality under *Loud Hawk*, 628 F.2d at 1150 (holding that the "government's right to appeal" is available only "conditionally"), and *Adrian*, 978 F.2d at 490 (the government must provide more than a "bare certification" to establish appellate jurisdiction). On the merits of the appeal, the panel affirmed the district court's rulings with respect to expert witnesses and related documents, but followed *Hicks* and held that the district court exceeded its authority in excluding from the government's case-in-chief undisclosed nonexpert witnesses.

---

[1]The defendants do not challenge the government's certification that the interlocutory appeal is not taken for purposes of delay.

We agreed to rehear this case en banc to reexamine the precedents that governed the decision of the three-judge panel.

## DISCUSSION

### I.   Standard of Review

"Jurisdiction is a question of law subject to *de novo* review." *United States v. Neville*, 985 F.2d 992, 994 (9th Cir. 1993). We review de novo a district court's rulings on the scope of its authority to order discovery under Federal Rule of Criminal Procedure 16. *United States v. Mendoza-Paz*, 286 F.3d 1104, 1111 (9th Cir. 2002).

### II.   Section 3731

Section 3731 grants the government the right to an interlocutory appeal from a district court's evidentiary rulings in certain circumstances. We have previously explained that the government's "right (via § 3731) to appeal a district court's order suppressing evidence is conditional." *Loud Hawk*, 628 F.2d at 1150; *see Adrian*, 978 F.2d at 490-91. "First, the appeal is not available if the defendant has been put in jeopardy. Second, the appeal must not be taken for purpose of delay. Third, the evidence suppressed must be substantial proof of a fact material in the proceeding." *Loud Hawk*, 628 F.2d at 1150. We have required that the government's bare certification be backed up by a preliminary showing that the excluded evidence truly is material. *See id.* (emphasizing that the materiality "condition must be met before appeal of the suppression order can properly be taken"). In *Adrian*, we defined materiality for purposes of § 3731 thus: "assuming that the evidence would be admissible, a reasonable trier of fact could find the evidence persuasive in establishing the proposition for which the government seeks to admit it." 978 F.2d at 491.

**[1]** The purposes of our certification-plus rule were salutary — to assure that the government's decision to involve us in the trial process was a carefully considered judgment and to provide us with enough information to determine whether a time-consuming appeal was truly justified. Nonetheless, we are now persuaded that the plain language of the statute shows that Congress intended that, as long as the other requirements of § 3731 are present, mere certification regarding the delay and materiality prerequisites is all the statute requires to invoke our appellate jurisdiction. This is evident from § 3731's phrasing, "An appeal by the United States *shall* lie to a court of appeals . . . *if* the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." (Emphasis added.) We read Congress as specifying what the government must do to establish those jurisdictional preconditions. Nothing in the statute requires the government to go further and prove that the evidence suppressed or excluded by the district court is actually material to the proceeding *before* our jurisdiction can attach. Where congressional intent "has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570 (1982) (internal quotation marks omitted). Moreover, Congress specifically instructed us in § 3731 that its "provisions . . . shall be liberally construed to effectuate its purposes." 18 U.S.C. § 3731. The purpose of § 3731 is to give the government a window of opportunity to challenge a district court's exclusion of allegedly material evidence before jeopardy attaches; we should not, therefore, read into the statute an unwritten additional hurdle, even if well intentioned.[2]

---

[2]The concurrence looks to the Westfall Act, 28 U.S.C. § 2679(d)(1), as a point of reference for interpreting § 3731. As the concurrence itself candidly concedes, however, given the contrast between the Westfall Act's certification regime and that of § 3731, the Act does not resolve our ultimate inquiry. Concurring op. at 5665-66 & n.3. We are satisfied that § 3731 means what it says, a conclusion shared by our sister circuits. More importantly, our reading does not require accepting the United States Attorney's certification as conclusive on the merits, only as sufficient to trigger our jurisdiction to reach them.

**[2]** Accordingly, we now hold that a certification by a United States Attorney (personally, not by an Assistant United States Attorney) that the appeal is not taken for the purpose of delay and that the evidence is substantial proof of a fact material in the proceeding is sufficient for purposes of establishing our jurisdiction under § 3731. The certification-plus rule of *Loud Hawk* and its progeny is overruled. *See United States v. Gantt*, 194 F.3d 987, 998 (9th Cir. 1999); *United States v. Poulsen*, 41 F.3d 1330, 1333-34 (9th Cir. 1994); *Adrian*, 978 F.2d at 490-91; *United States v. Layton*, 720 F.2d 548, 554 (9th Cir. 1983).

By so holding, we align ourselves with our sister circuits that have held that § 3731 is satisfied as long as the United States Attorney certifies that the statutory conditions are met. *See Gov't of Virgin Is. v. Hodge*, 359 F.3d 312, 325 & n.13 (3d Cir. 2004) (holding that jurisdiction was proper based on the filing of the certification); *United States v. Centracchio*, 236 F.3d 812, 813 (7th Cir. 2001) ("We therefore treat as conclusive of our jurisdiction over a [§ 3731] appeal the submission of the certification required by the statute."); *United States v. Johnson*, 228 F.3d 920, 923 (8th Cir. 2000) (holding that "appellate jurisdiction is proper if the government simply certifies that the evidence suppressed is substantial proof of a material fact"); *see also United States v. McNeill,* 484 F.3d 301, 308-09 (4th Cir. 2007) (suggesting certification alone is sufficient if timely).[3] These holdings are all consistent with § 3731's mandate that an interlocutory appeal "shall lie . . . if" the United States Attorney makes the specified representations in his or her certification. Our former rule added a hurdle that had to be cleared before our jurisdiction could attach; that is not what Congress instructed.

---

[3]Two circuits — the Eighth and the Third — have expressly noted the circuit split, in which the "Ninth Circuit, apparently alone, requires the government to prove that the evidence suppressed by the district court is actually 'material' to the upcoming trial." *Johnson*, 228 F.3d at 923; *see Hodge*, 359 F.3d at 325 n.13.

The concurring opinion raises two principal concerns based on its fears of what might go wrong under the prevailing certification-only rule we are adopting. First, it worries about delays in the trial proceedings, to the disadvantage of defendants. We acknowledge those concerns but do not believe that they allow us to impose a two-step screening process that Congress has not required. Section 3731 not only requires the United States Attorney to certify that the interlocutory appeal is not for purpose of delay, but also mandates that the appeal "shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted." We have the authority to assure that these affirmative requirements are met.[4] Moreover, we also have the ability to expedite the appellate process should that become necessary in an individual case, or even on a systemic basis if our experience warrants it. In that regard, we have no evidence that the certification-plus rule of *Loud Hawk* is more efficient than simply accepting certification as sufficient to establish our jurisdiction.[5]

---

[4]For example, we have previously dealt with certificates that are not timely filed in the district court. *See, e.g.*, *United States v. Becker*, 929 F.2d 442, 445 (9th Cir. 1991) (noting that whether the government could supplement the record on appeal with an untimely filed § 3731 certification was a discretionary matter for the court); *see also McNeill*, 484 F.3d at 306-10 (noting that although failure to timely file a § 3731 certification does not deprive the court of jurisdiction over the appeal, the court had discretion to impose any sanction necessary to enforce the requirement of filing a § 3731 certification, including dismissal); *United States v. Romaszko*, 253 F.3d 757, 759-60 (2d Cir. 2001) (per curiam) (holding that the late filing of a § 3731 certification does not preclude jurisdiction but does permit the court to exercise its discretion under Federal Rule of Appellate Procedure 3(a) to dismiss the appeal). The merits of whether the government should ever be excused from failure to file a § 3731 certification on a timely basis are not before us in this appeal.

[5]The concurrence notes that "[i]t currently takes nine to ten months from the filing of an interlocutory appeal in a criminal case to its placement on an argument calendar." Concurring op. at 5679-80. That may be, although such is not the case when the proceedings are expedited. In any event, Congress has made the judgment that the government is entitled to

Second, the concurrence urges that, by accepting the United States Attorney's certification as sufficient to invoke our jurisdiction, we are "blindly trust[ing] United States Attorneys," adopting a rule that "permits a prosecutor to disrupt proceedings with the stroke of a pen" and giving the prosecution "unchecked authority to pursue interlocutory appeals from all suppression orders." Concurring op. at 5675, 5682, 5679. Not so. The certification itself is a representation by the United States Attorney, as an officer of the court, that the appeal is not for purposes of delay and that the suppressed evidence is indeed material.[6] As to materiality, § 3731 provides that the certification establishes only our jurisdiction. If the merits of the appeal independently require us to question whether the evidence truly is material, the government's certification is not conclusive — as the concurrence acknowledges, *id*. at 5678-79 & n.10 — so we are not required to "mak[e] new law in a near factual vacuum." *Id*. at 5677. Moreover, should we find the government's appeal to be patently frivolous or have reason to believe its certification is false, we could directly sanction such misconduct, surely a potent "check" on prosecutorial abuse of the certification process. In short, the certification-only rule that we adopt today

---

an interlocutory appeal in specified circumstances, and the *Loud Hawk* certification-plus rule does nothing to get the appeal on an argument calendar any faster than the prevailing certification-only rule. Indeed, because we must first determine the jurisdictional issue and then determine the merits separately, a final determination under the *Loud Hawk* rule may well take longer. Although the concurrence invokes the appeal in this case to "demonstrate the *Loud Hawk* rule's necessity" to prevent delay, *id.*, it actually shows the opposite. But for *Loud Hawk*, the original panel would not have had to look beyond the certification and spend time forcing the government to prove the suppressed evidence was material (it was) before getting to the merits of the appeal. (That "the trial date remains in limbo," *id*. at 5680, is largely a function of our en banc process.)

[6]The definition of materiality governing the United States Attorney's certification is well established, *see Adrian*, 978 F.2d at 491 (quoted in text, above), and remains the law of this circuit.

and which is followed in other circuits does not give prosecutors any benefit beyond the statutory right to the interlocutory appeal that Congress provided in § 3731, or permit a United States Attorney to misuse the certification process.

In that regard, we emphasize that we are not diluting a standard implicit in the certification requirement. By specifying that the United States Attorney must certify the appeal, Congress plainly intended that the decision to take an interlocutory appeal be a serious, considered judgment, not simply an administrative formality. The Fourth Circuit recently emphasized this point:

> The authorization to file these interlocutory appeals is important to the prosecution of criminal cases because it permits the government to obtain appellate review, before jeopardy attaches, of trial court decisions suppressing what the government believes is evidence necessary to prove a crime. But because such an appeal necessarily disrupts trial court proceedings, the authorization contains an important limitation that is intended to protect defendants from *undue* delay . . .

> The certification requirement of § 3731 operates to ensure that before the United States interrupts a criminal proceeding (and thereby delays a defendant from obtaining resolution of the charges against him) by taking an interlocutory appeal, it has evaluated whether the appeal is warranted.

> Thus, the filing of a § 3731 certification is not merely an administrative formality; it serves the important purpose of assuring the defendant's protection from undue delay.

*McNeill,* 484 F.3d at 308 (emphasis in original) (internal quotations and citation omitted).

Significantly, the United States Attorney's decision to appeal requires the concurrence of the Solicitor General of the United States. *See Centracchio*, 236 F.3d at 813 (concluding that the Solicitor General's approval means there is "no significant danger that the appeal will be frivolous, warranting dismissal rather than disposition on the merits"); *Romaszko*, 253 F.3d at 760 ("[T]he Solicitor General authorized the appeal. This authorization likely ensures that the purposes of section 3731 were met."); *see also McNeill*, 484 F.3d at 307 (referring to the United States Attorney obtaining approval from the Solicitor General "in accordance with internal Department of Justice policy"); *United States v. Colomb*, 419 F.3d 292, 296-97 (5th Cir. 2005) (noting that the appeal followed the government obtaining approval of the Acting Solicitor General). Thus we expect the concerns about frivolous or disruptive attempts to involve us prematurely in ongoing trial proceedings that animated our previous certification-plus rule (and trouble our concurring colleague) will be addressed by the government's wise and careful invocation of § 3731 appeals.

[3] In sum, we conclude that the United States Attorney's certification in this case suffices to establish our jurisdiction to hear the government's interlocutory appeal. We therefore turn to the government's challenges to the district court's pretrial orders.

### III.    The Pretrial Case Management and Enforcement Orders

The government advances several arguments why the challenged pretrial orders are flawed: First, the district court lacked the authority to require in its March 2005 order that the government provide a pretrial witness list; second, even if the court had such authority, it could not require a final list, especially a year before trial; finally, the exclusionary effect of the enforcement orders was an inappropriate sanction. In response, the defendants argue that the district court had

authority to order witness lists and acted within its discretion in enforcing its orders. We agree with the defendants.

## A.  Authority

We begin with the principle that the district court is charged with effectuating the speedy and orderly administration of justice. There is universal acceptance in the federal courts that, in carrying out this mandate, a district court has the authority to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly.

The principal orders at issue are the district court's March 2005 order that, among other things, required the government to disclose by September 30, 2005 a "finalized list of witnesses"; and the court's enforcement orders that limited the government's use of witnesses in its case-in-chief (but not rebuttal) to those who had been timely disclosed. The government did not object to the March 2005 order at the time, but when it filed its proposed witness list in September it purported to reserve "its right to update its witness list and exhibit list through the close of all evidence at trial." The government now argues that the district court had no authority to require the government to produce such a witness list, particularly not a *finalized* list one year before trial, and to preclude the government from calling additional witnesses not disclosed by the time of the court's mandated deadline.

We disagree. The district court's March 2005 pretrial order and the enforcement orders fit comfortably within the court's authority under Federal Rules of Criminal Procedure 2 and 16, and its more general inherent authority to manage its docket. Although our decision in *United States v. Hicks*, 103 F.3d 837 (9th Cir. 1996), would suggest otherwise, we disap-

prove of *Hicks*' reasoning and overrule it to the extent that it conflicts with our decision today. Rather, we align ourselves with the other circuit courts that, although not all relying on a uniform source of authority, widely agree that a witness disclosure order directed to the government is within the district court's discretion to impose and enforce.[7]

**[4]** There is a "well established" principle that "[d]istrict courts have inherent power to control their dockets." *Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998) (alteration in original) (internal quotation marks omitted). Further, "judges exercise substantial discretion over what happens *inside* the courtroom." *United States v. Simpson*, 927 F.2d 1088, 1091 (9th Cir. 1991). We have accepted that " '[a]ll federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders.' " *Aloe Vera of Am., Inc. v. United States*, 376 F.3d 960, 964-65 (9th Cir. 2004) (per curiam) (quoting *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001)).

Other circuits that have addressed a district court's authority to require the government to disclose its witness list in advance of trial have agreed that the court may do so. *See United States v. Cannone*, 528 F.2d 296, 299 (2d Cir. 1975) ("The general discretion of district courts to compel the government to identify its witnesses is acknowledged widely . . . ."). Some have invoked the court's "inherent power, exercisable under appropriate circumstances, to assure the proper and orderly administration of criminal justice." *United States v. Jackson*, 508 F.2d 1001, 1007 (7th Cir. 1975); *see United States v. Napue*, 834 F.2d 1311, 1318 (7th Cir. 1988) ("[A] district court has the authority to require the government to

---

[7]We do not decide whether or to what extent the defense can be compelled to disclose a list of its witnesses before trial, and do not address those issues here.

provide the defendant with such a list . . . . [as] part of the court's inherent power") (internal quotation marks omitted); *United States v. Higgs*, 713 F.2d 39, 44 n.6 (3d Cir. 1983) ("While it is true that the government is not automatically required to make such disclosure, the district court, within its discretion, may order such disclosure to ensure the effective administration of the criminal justice system.") (citation omitted); *Cannone*, 528 F.2d at 298 ("It is recognized that wide latitude is reposed in the district court to carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice.") (internal quotation marks omitted). Others have not explained the source of authority, but simply have stated that it is within a district court's discretion to order the government to produce a witness list under appropriate circumstances. *See, e.g.*, *United States v. DeCoteau*, 186 F.3d 1008, 1010 n.2 (8th Cir. 1999) ("[A] district court in this circuit may exercise its discretion to require such disclosure in a proper case.") (internal quotation marks omitted); *United States v. Rosales*, 680 F.2d 1304, 1305 (10th Cir. 1981); *United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981); *United States v. Kendricks*, 623 F.2d 1165, 1168 (6th Cir. 1980) (per curiam). Finally, some have grounded the authority in Rule 16 itself, *see, e.g.*, *United States v. Jordan*, 466 F.2d 99, 101 (4th Cir. 1972), or in a combination of Rule 16 and Rule 2, *see United States v. Fletcher*, 74 F.3d 49, 54 (4th Cir. 1996).

We first examine the rule-based approach. Rule 16 specifies categories of witnesses and documentary evidence that are subject to *mandatory* pretrial disclosure. *See* Fed. R. Crim. P. 16(a)(1) & (b)(1) (*e.g.*, requiring the government to disclose at the defendant's request a written summary of expert testimony the government intends to use during its case-in-chief). The rule also identifies kinds of information that are *not* included in the mandatory disclosure categories. *See* Fed. R. Crim. P. 16(a)(2) & (b)(2) (*e.g.*, exempting government investigative or prosecuting documents). With respect to the district court's authority, Rule 16(d)(1) permits the court, "for

good cause, [to] deny, restrict, or defer discovery or inspection, or grant other appropriate relief," and Rule 16(d)(2) grants the court broad authority to enforce "this rule," including by any order "that is just under the circumstances."

**[5]** Congress has thus addressed the kinds of information the government and defendants are *obligated* to provide to each other before trial by way of discovery and the district court's authority to enforce those obligations. Rule 2 bolsters that authority by instructing that the rules "are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." The thrust of Rule 16 — viewed in light of Rule 2 — is to allow the district court to ensure that the parties comply with the letter and spirit of the rule. Much of the government's challenge to the district court's orders here can be disposed of under the express provisions of Rule 16 — such as the disclosure of scientific reports and *expert* witnesses, which we shall discuss presently.[8]

Although Rule 16 does not expressly mandate the disclosure of *nonexpert* witnesses, it is not inconsistent with Rule 16 and Rule 2 for a court to order the government to produce a list of such witnesses as a matter of its discretion. *See Fletcher*, 74 F.3d at 54 (citing Rule 16 and Rule 2 in upholding an order for disclosure of witnesses); *Jackson*, 508 F.2d at 1007 (citing Rule 2 in rejecting the government's argument that the district court's authority to order it to disclose its witness list should be conditioned on the defense's showing of materiality and reasonableness). Above all, nothing in Rule 16 expressly prohibits the district court from ordering additional pretrial discovery or disclosures that will also further the objectives set forth in Rule 2. *See Jackson*, 508 F.2d at 1006 (stating that "the present [Rule 16] is no bar to the order"). The Supreme Court has recognized that federal courts "may,

---

[8]*See* Fed. R. Crim. P. 16(a)(1)(E)(ii), (a)(1)(F) & (a)(1)(G).

within limits, formulate procedural rules not specifically required by the Constitution or the Congress." *United States v. Hasting*, 461 U.S. 499, 505 (1983).[9] Of course, "[w]hatever the scope of this 'inherent power,' . . . it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure." *Carlisle v. United States*, 517 U.S. 416, 426 (1996); *see Atchison*, 146 F.3d at 1074 ("[D]istrict courts have inherent power to control their dockets, but not when its exercise would nullify the procedural choices reserved to parties under the federal rules."). Ordering the pretrial disclosure of nonexpert witnesses does not "circumvent or conflict" with Rule 16. *Carlisle*, 517 U.S. at 426. The rule does not entitle the defendant to a list of such witnesses, but by the same token it does not suggest that a district court is *prohibited* from ordering such a disclosure. *See*

---

[9]We have previously read *Hasting* as "limit[ing]" federal courts' inherent powers to "three specific areas":

> (1) to implement a remedy for a violation of recognized rights;
> (2) to preserve judicial integrity by ensuring that a criminal conviction rests on appropriate considerations validly before the jury;
> and (3) to deter future illegal conduct.

*United States v. Gonsalves*, 781 F.2d 1319, 1320 (9th Cir. 1986); *see also United States v. Simpson*, 927 F.2d 1088, 1090 (9th Cir. 1991). Here, the government argues that because the district court's order does not fall within any of those "three specific areas," the order is beyond the court's inherent powers. Our previous cases read *Hasting* too narrowly. There is nothing in that opinion that "limit[s]" the inherent powers to these three areas. The Supreme Court has, since *Hasting*, approved several exercises of inherent power that are beyond the "three specific areas" we thought *Hasting* delimited. *E.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (district courts have inherent power to punish bad-faith conduct by awarding attorneys' fees to the other side); *Thomas v. Arn*, 474 U.S. 140, 142, 146-47 (1985) (circuit courts have inherent power to establish a rule that "the failure to file objections to the magistrate's report waives the right to appeal the district court's judgment"). We therefore return to the understanding of inherent power that we recognized in *United States v. Richter*, 488 F.2d 170, 173-74 (9th Cir. 1973), according to which district courts have the inherent power to "order the government to divulge names of prospective witnesses."

*Jackson*, 508 F.2d at 1006 ("[T]he Government fails to distinguish between the right of the defendant to demand a list of witnesses, and the authority of the court to order such disclosure under the appropriate circumstances.").

**[6]** As noted earlier, some courts have found an affirmative grant of authority to order the pretrial disclosure of all of the government's proposed witnesses in Rule 16's enforcement provisions (sometimes also invoking Rule 2). In doing so, these decisions have elided the language of Rule 16(d)(1) and (2) that appears to focus on enforcing the mandatory disclosure provisions of Rule 16 itself.[10] We do not, however, have to resolve whether Rule 16 alone or in combination with Rule 2 provides sufficient authority for the district court's orders regarding nonexpert witnesses. At the very least these rules do not preclude such orders. Further, they reinforce the logic and fairness of requiring the government to produce a pretrial witness list of both experts and nonexperts (subject to appropriate conditions) so that the parties — and the district court — may be adequately prepared for trial. That is the essential premise of the court's inherent power to manage its cases to ensure the fair and effective administration of the criminal justice system. *See United States v. Richter*, 488 F.2d 170, 173-74 (9th Cir. 1973) ("It is recognized that wide latitude is reposed in the district court to carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice . . . . It would be ill-advised to limit improvidently this inherent power for fear of misuse.").[11]

---

[10]By its plain terms, Rule 16 speaks to specified kinds of discovery in criminal cases, and its enforcement provisions parallel this specificity rather than addressing the general authority of the court. Rule 16(d)(1) refers to granting relief related to "discovery or inspection," which is Rule 16's title; and (d)(2) authorizes courts to take certain actions "if a party fails to comply with *this rule*." (Emphasis added.) *But see, e.g.*, *Fletcher*, 74 F.3d at 54 (citing Rule 16 as granting authority to regulate discovery broadly).

[11]*Richter* predated the 1993 amendments to Rule 16, in which Congress adopted provisions concerning expert witness disclosures. Notwithstand-

Insofar as we held in *Hicks* that a district court has no authority to order the government to produce a pretrial witness list beyond that specified in Rule 16, we now join our sister circuits and hold to the contrary. *See Hicks*, 103 F.3d at 841. In retrospect, our decision did not correctly distinguish between the mandatory disclosure requirements of Rule 16 and the district court's discretionary authority to order pretrial disclosures of government witnesses in appropriate circumstances. In *Hicks*, the district court had ordered the parties to exchange witness lists and short summaries of anticipated witness testimony. *Id.* at 840. The defendant (not the government) objected, but eventually complied and appealed the district court's order, arguing that "the district court did not have the authority under Rule 16 . . . to issue such an order." *Id.* We agreed, stating that a "district court that orders *the Government* and the defendant to exchange witness lists and summaries of anticipated witness testimony in advance of trial has exceeded its authority under Rule 16 of the Federal Rules of Criminal Procedure and has committed error." *Id.* at 841 (emphasis added). To support this conclusion, *Hicks* relied on Congress' rejection in 1975 of a proposed amendment to Rule 16 that would have required both the government and the defense to disclose their witnesses before trial. We inferred from this rejection that Congress intended to deny a district court *any* authority to order any pretrial witness disclosure other than that expressly provided under Rule 16. *See id.*

Inferring from the legislative history such a sweeping denial of authority was not an inevitable conclusion. There was no suggestion that Congress intended to bar district courts from exercising their discretionary authority to order pretrial discovery and disclosures from the government under

ing these amendments, we do not read Congress as precluding district courts' authority to regulate the discovery of *nonexpert* witnesses just because Congress specifically adopted certain rules pertaining to *expert* witness disclosures. The reasons for not limiting such authority are well expressed in *Richter*, 488 F.2d at 173-74.

terms and conditions that courts normally use to manage the fair and efficient conduct of trials. Rather, Congress was concerned that a mandatory disclosure rule would discourage government witnesses from testifying and lead to witness intimidation. *See Napue*, 834 F.2d at 1317 ("The conference committee expressed concern that such a requirement would discourage witnesses from testifying and would lead to 'improper contact directed at influencing their testimony.' ") (quoting H.R. Rep. No. 94-414, at 12 (1975) (Conf. Rep.), *reprinted in* 1975 U.S.C.C.A.N. 713, 716). Congress said nothing about the district court's *discretion* to order such a pretrial disclosure, subject to the court's ability to tailor disclosures to specific concerns in a particular case, including the use of protective orders. *See, e.g.*, *United States v. Fort*, 472 F.3d 1106, 1131 (9th Cir. 2007). We therefore conclude that *Hicks* adopted an overly broad reading of Rule 16 and unnecessarily restricted the district court's discretionary authority to order discovery from the prosecution.

**[7]** In sum, we hold that a district court, consistent with Rule 16 and Rule 2 and as part of the court's inherent authority to manage its docket, may in appropriate circumstances require the government to disclose a final list of its proposed trial witnesses and has the authority to enforce such an order. *Hicks* is overruled to the extent that it applied to such disclosures by the government.

## B.   The District Court's Exercise of its Authority

The government contends that, even if the orders were authorized, both the March 2005 order and the enforcement orders were an abuse of the court's discretion. We do not agree. Although a district court's discretion to order pretrial discovery is not unfettered, the district court did not abuse its discretion here.

**[8]** We first address the court's orders insofar as they concerned expert disclosures and scientific reports, the disclosure

of which is governed by Rule 16(a). Subsections (a)(1)(G), (a)(1)(E)(ii) and (a)(1)(F) of Rule 16 require the government to disclose, at the defendant's request, a summary of any expert witness testimony the government intends to use during its case-in-chief at trial as well as "the bases and reasons for those opinions"; documents within the government's possession, custody or control that the government intends to use; and certain scientific reports. The March 2005 case management order expressly implemented those provisions by requiring the timely disclosure of the government's expert witnesses and an expert report tailored to the issues on which each expert is expected to testify. The December 2005 enforcement order also clarified that expert disclosures must identify the documents or information that the expert reviewed in preparing his or her report, a condition well within Rule 16's requirement that expert disclosures describe "the bases and reasons for those opinions." The district court's orders imposing and enforcing these expert witness disclosures were clearly within its Rule 16 authority and not an abuse of its discretion.

Next, as to both expert and nonexpert witnesses, the government argues that requiring it to disclose its *final* list of witnesses a year before trial was unreasonable and that the district court's exclusion of witnesses and reports not disclosed by December 5, 2005 was an inappropriate sanction. We reject the government's objections for several reasons.

[9] First, the district court's March 2005 order set a relatively early deadline for the government to provide a final witness list in advance of the then-scheduled September 2006 trial. The record reflects that the court had good reason to impose such a deadline, however; the court believed that the deadline would bring the necessary focus and organization to ready the case for trial. The charged conspiracy reaches back nearly 30 years, the government now proposes to call more than 200 witnesses, there are many defendants and allegations, and millions of pages of documents have been produced

during discovery. Such a complex case poses special challenges to the parties in preparing for trial and to the court in managing the litigation. Moreover, the government itself had initially suggested a *September 2005* trial date, indicating to the district court that the government could be prepared for trial by then. When asked in the March 2005 status conference whether the government could make its expert disclosures by the end of September, the prosecutor responded, "[t]hat would be good," and when asked about a finalized list of witnesses and trial exhibits by the end of September, he said he "d[id]n't have a problem with that." The government also did not object to the disclosure deadlines set by the March 2005 order. Rather, when it filed its supposed "final" list in September 2005 it simply and unilaterally reserved its "right" to supplement the list up to the time of trial. Given the size and complexity of the case and the government's acquiescence in the dates for final witness and document disclosures, the district court's March 2005 order was reasonable and not an abuse of discretion.[12]

Second, the government mischaracterizes the enforcement orders as an exclusionary "sanction." The enforcement orders were not imposed as a sanction; they simply enforce the earlier pretrial order requiring the timely identification of trial witnesses and documentary evidence. In March 2005, when the government told the court it was prepared to try the case that September, the government estimated it would be calling 60 to 80 witnesses; by the time it filed its witness list on September 30, the number of witnesses had grown to 233 and counting. At the December 2005 status hearing, the district court rejected the government's arguments for expanding the list further, finding that the government "cannot now credibly claim that it is necessary to continue adding witnesses to an already unwieldy list." Accordingly, it ruled that "the govern-

---

[12]Notably, the district court did not take a rigid approach, effectively converting the September 30 deadline to a December 5 deadline by virtue of the December 2005 order.

ment's presentation at trial will be limited to those witnesses that have been disclosed as of the filing of this Order [i.e., December 5, 2005]," later clarifying in the February 2006 order that this limitation applied only to the government's case-in-chief, not to rebuttal witnesses. Given the many discussions the court had with counsel about the fluid nature of the government's evolving case and the court's expressed concerns that the government seemed unable to get its trial preparation under control, it could hardly have been a surprise that the court froze the witness list when and as it did.

Third, even if we were to view the enforcement orders as a sanction, they still would not be an abuse of the court's discretion. At the outset, we emphasize that we are addressing only the preclusive effect of the enforcement orders as they currently stand because, apart from this interlocutory appeal, the government has thus far sought no relief from the district court's orders with respect to any particular excluded witness. We do not know whether the district court would be persuaded to allow the government to add or substitute one or more new witnesses for good cause. *See, e.g.*, D. Mont. R. 7.3 (permitting a party to seek relief from the district court if it finds new evidence and can demonstrate good cause). Nonetheless, the government relies on *United States v. Finley*, 301 F.3d 1000 (9th Cir. 2002), for the proposition that the exclusion of witnesses can be imposed as a sanction *only* when the district court finds the violation of a disclosure order was "willful and motivated by a desire to obtain a tactical advantage." *Id*. at 1018 (quoting *Taylor v. Illinois*, 484 U.S. 400, 415 (1988)). Because the district court made no such findings in this case, the government contends the exclusion orders cannot stand. *Finley*, however, like *Taylor*, involved a defendant's right to present evidence, not the government's, and has no bearing here. *See Finley*, 301 F.3d at 1018 ("Because the Supreme Court has recognized that '[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense,' *Taylor*, 484 U.S. at 408, courts should use

particular caution in applying the drastic remedy of excluding a witness altogether.").

Finally, the government argues that even if a court can legitimately compel the government to disclose its witness list, it cannot force the government to finalize that list on penalty of exclusion of later discovered witnesses, particularly a year before trial. Relying on *United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir. 1985), it contends the district court's orders violated the separation of powers principle by improperly commandeering the government's investigatory and prosecutorial functions. Of course, the orders did no such thing — as we have discussed, they dealt with managing the proceedings inside the courtroom, not with the government's performance of its prosecutorial duties outside the courtroom. The government's discretion to investigate and present its case does not override the district court's authority to manage the trial proceedings — including by setting discovery and disclosure deadlines — and *Gatto* does not hold otherwise.[13]

The government's reliance on *Gatto* is misplaced. That case involved a district court order requiring the government to provide discovery in accordance with Rule 16. Four weeks before trial and well after the discovery disclosure deadline had passed, the government belatedly learned that cooperating state officials had relevant documents that should have been produced to the defendants. Invoking its authority under *both* Rule 16(d)(2) and the court's inherent supervisory power, the district court precluded use of the evidence during the govern-

---

[13]Although *Gatto* has been bemoaned as "lay[ing] down an inflexible rule — the government has an absolute right to call its lately acquired witness whatever the consequences to the administration of justice in other respects," *United States v. Schwartz*, 857 F.2d 655, 660 (9th Cir. 1988) (Hupp, J., concurring), we disavow that it did create such an "absolute rule," as we explain in text. As the majority in *Schwartz* itself recognized, a district court may exclude documents or witnesses for failure to comply with the court's pretrial or discovery orders. *See Schwartz*, 857 F.2d at 659.

ment's case in-chief. *Id.* at 1043. On the government's § 3731 appeal, we held that the court lacked authority under either its supervisory power or Rule 16. As to the former, we emphasized that the government's delay in disclosure had not violated "any constitutional provision, federal statute, specific discovery order, or any other recognized right except perhaps [R]ule 16." *Id.* at 1046. There was no need to resort to the court's inherent supervisory power to create any other remedy for a violation of Rule 16 because the rule itself contains specific remedies for its violation. *See id.* As to Rule 16, we expressly held that the government's failure to disclose the documents earlier did not violate the rule because the state-held documents were not in the government's actual possession. *Id.* at 1049.

Unlike *Gatto*, here the government would violate Rule 16 if it were to call expert witnesses who were not timely disclosed. Therefore, the district court may properly rely on its Rule 16 authority where appropriate to enforce its orders. As to the disclosures not mandated by Rule 16, the court has inherent authority to enforce its specific discovery order, which the government would violate if it were to call undisclosed nonexpert witnesses. First, with respect to the expert disclosures, the district court's March 2005 order was well within the bounds of Rule 16, as we have already discussed. The government did not object to the order, but instead reserved to itself a right to supplement its disclosures through the close of evidence at trial. The district court had the authority under Rule 16(d)(2) to reject this unilateral reservation of rights and enforce the discovery requirements mandated by the rule; it did not need to resort to its inherent authority. Second, as to the March 2005 order's mandate to disclose nonexpert witnesses, who do not come within the express terms of Rule 16, nothing in *Gatto* — or in Rule 16 itself, as we have discussed in Section III(A) — precludes a district court from relying on its inherent authority to order such witness disclosures or to enforce its order. As *Gatto* expressly noted, the government had not violated "any . . . specific discovery

order." *Id.* at 1046. Here there was such an order, and if it is violated, the district court may exclude evidence as a sanction. Although there are limits to the district court's inherent authority, the district court here is well within its authority to manage its docket in enforcing a valid pretrial discovery order. *See United States v. Talbot*, 51 F.3d 183, 187-88 & n.5 (9th Cir. 1995)(distinguishing *Gatto* and upholding exclusion of government witnesses for violation of pretrial disclosure order).

## IV.   Conclusion

In conclusion, we hold that the United States Attorney's § 3731 certification to the district court sufficed to invoke our appellate jurisdiction over this interlocutory appeal. We further hold that the district court had authority to order and enforce the pretrial disclosures of government witnesses and evidentiary documents and that the district court did not abuse its discretion in doing so here. Should the government seek leave to add a specific witness or report it believes is foreclosed by the district court's pretrial orders, we leave it to the district court to address the request in accordance with the principles we have set forth in this opinion.

**AFFIRMED.**

---

HAWKINS, Circuit Judge, with whom PREGERSON and WARDLAW, Circuit Judges, join, concurring as to Part III, and concurring in the judgment:

We face two closely related issues, both dealing with the ability of district judges to manage complex criminal trials. One is whether a district judge may order the government to provide a final witness list prior to the beginning of trial. This one the Opinion gets absolutely right, holding that the interests of trial continuity outweigh any interest in withholding

those names and disclosing them only when the prosecution deems it appropriate. The other is whether the prosecution can delay a trial and require an interlocutory appeal on an evidentiary ruling on nothing more than its say so. By my lights, the Opinion not only gets this one wrong, but also creates along the way what our colleague Judge Goodwin describes as a "hazard to navigation" to the efficient and evenhanded administration of justice in our trial courts.

For the following reasons, I respectfully part from the portion of the Opinion dealing with 18 U.S.C. § 3731.

## I.   Statutory Text

According to the majority, the plain language of § 3731 precludes this court from exercising any independent judgment over its own jurisdiction. I disagree.

The second paragraph of § 3731 provides:

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

Reading this, the majority believes that it is evident from the statute's phrasing that the courts of appeals are forbidden from applying even the most modest scrutiny to the United States Attorney's certification. On my reading, the statute is ambiguous and nothing in the text compels the majority's interpretation.

We begin with a straightforward proposition: Congress not only knows how to tell courts of appeals to defer completely to the United States Attorney, it has done just that in the confines of a remarkably similar certification statute. Under the Westfall Act, 28 U.S.C. § 2679, when a federal employee is sued for a wrongful or negligent act, the United States is to be substituted as the party defendant "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." *Id.* § 2679(d)(1). A separate subsection of the same Act provides that a suit commenced in state court shall be removed to federal court upon the Attorney General's scope-of-employment certification, and that "[t]his certification of the Attorney General *shall conclusively establish* scope of office or employment for purposes of removal." *Id.* § 2679(d)(2) (emphasis added). Importantly, there is no similar provision in § 2679(d)(1); Congress never stated that the Attorney General's certification would be conclusive for the *substitution* inquiry.

The Supreme Court has considered both the removal and substitution subsections of the Westfall Act. Interpreting the removal provision, the Court explained that "Congress gave district courts no authority to return cases to state courts on the ground that the Attorney General's certification was unwarranted. . . . For purposes of establishing a forum to adjudicate the case . . . § 2679(d)(2) renders the Attorney General's certification dispositive." *Osborn v. Haley*, 127 S. Ct. 881, 894 (2007). This reading makes perfect textual sense, for if it were "open to a district court to remand a removed action on the ground that the Attorney General's certification was erroneous, the final instruction in § 2679(d)(2) would be weightless. The Attorney General's certification would not 'conclusively establish scope of office or employment' for either trial or removal." *Id.* at 895.

By contrast, the Supreme Court has held that the scope-of-employment certification under § 2679(d)(1)—the substitu-

tion provision—is reviewable. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995). As a matter of syntax, § 2679(d)(1) cannot be meaningfully distinguished from § 3731. That section of the Westfall Act provides, in full:

> *Upon* certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court *shall* be deemed an action against the United States under the provisions of this title and all references thereto, and the United States *shall* be substituted as the party defendant.

28 U.S.C. § 2679(d)(1) (emphasis added).

In *Gutierrez de Martinez*, the Supreme Court framed "[t]he sole question . . . [as] *who decides* on which side of the [scope-of-employment] line the case falls: the local United States Attorney, unreviewably or, when that official's decision is contested, the court."[1] 515 U.S. at 423-24. Unlike the majority in the present case, the Court did not hold that the phrase "[u]pon certification by the Attorney General," or the word "shall,"[2] made evident Congress's intent to preclude

---

[1]The local United States Attorney was acting on behalf of the Attorney General. 515 U.S. at 421.

[2]The majority emphasizes the word "shall" in § 3731, suggesting, I take it, that we must exercise jurisdiction if the United States Attorney certifies the necessary facts. As a textual matter, the word provides very little guidance, even aside from the reality that "legal writers sometimes use, or misuse, 'shall' to mean 'should,' 'will,' or even 'may.' " *Gutierrez de Martinez*, 515 U.S. at 432 n.9; *see also id.* at 433 n.9 (noting that Federal Rule of Civil Procedure 16(e) and Federal Rule of Criminal Procedure 11(b) "use the word 'shall' to authorize, but not to require, judicial action"). I agree that we have no discretion to decline jurisdiction if the United States Attorney's certification obligation is satisfied. I dispute only the nature of that obligation, which is a question upon which the word "shall" has no bearing.

courts from looking beyond the Attorney General's naked certification. Instead, the Court believed that "Congress did not address this precise issue unambiguously, if at all . . . . [T]he Westfall Act is, on the 'who decides' question we confront, open to divergent interpretation."[3] *Id.* at 424.

Where the Supreme Court perceived "statutory fog," *id.* at 425, the majority finds congressional intent that "has been expressed in reasonably plain terms." We are told that "[n]othing in the statute requires the government to go further and prove that the evidence suppressed or excluded by the district court is actually material to the proceeding before our jurisdiction can attach." A fair point, but not one that establishes the statute is unambiguous. Using the same reasoning, it seems clear that nothing in the statute *prohibits* the court from examining the United States Attorney's certification.

The majority finds guidance in the portion of § 3731 that reads, "The provisions of [§ 3731] shall be liberally construed to effectuate its purposes." Congress did not explicitly state its purposes, so this provision invites some question-begging.[4]

---

[3]I rely on *Gutierrez de Martinez* only for my textual analysis. Although the case resulted in the outcome I argue for here, the contrast between the Westfall Act and § 3731 precludes me from suggesting that the Supreme Court resolved our ultimate inquiry. For example, in *Gutierrez de Martinez*, the Attorney General's certification would have led to an automatic dismissal of the case on sovereign immunity grounds, and "when a Government official's determination of a fact or circumstance—for example, 'scope of employment'—is dispositive of a court controversy, federal courts generally do not hold the determination unreviewable." *Gutierrez de Martinez*, 515 U.S. at 424. And, as discussed, the inclusion of the word "conclusively" with respect to removal, and its absence with respect to the substitution issue, provided strong textual evidence that the latter was reviewable. *See id.* at 432; *see also Osborn v. Haley*, 127 S. Ct. 881, 895 (2007). Additionally, the court looked to the particular and unique impetus that led to adoption of the Westfall Act. 515 U.S. at 425-26. That legislative backdrop does not apply here.

[4]The majority wisely ignores the government's invocation of *United States v. Wilson*, which held that § 3731 was "intended to remove all statu-

The majority posits that "[t]he purpose of § 3731 is to give the government a window of opportunity to challenge a district court's exclusion of allegedly material evidence before jeopardy attaches; we should not, therefore, read into the statute an unwritten additional hurdle, even if well intentioned."

This reading distorts Congress's intent. The majority's description would be accurate if there were no certification requirement in the statute. But that requirement exists, and it undoubtedly reflects Congress's concern that the government might abuse its appellate rights. Indeed, the majority recognizes that "[b]y specifying that the United States Attorney must certify the appeal, Congress plainly intended that the decision to take an interlocutory appeal be a serious, considered judgment, not simply an administrative formality."

Deterring frivolous appeals is as much of a statutory purpose as enabling worthy ones, and the *Loud Hawk* rule liberally construes the certification requirement to effectuate both purposes. Far from being unwritten hurdles, the jurisdictional conditions identified by *Loud Hawk* are drawn straight from § 3731's text. The majority, however, appears content to liberally construe the first half of the paragraph, while strictly construing the second half.

Interestingly, of the three jurisdiction-conferring provisions of § 3731, only the one at issue in this case requires the government to certify facts to the district court.[5] This suggests

tory barriers to Government appeals and to allow appeals whenever the Constitution would permit." 420 U.S. 332, 337 (1975). The government fails to appreciate that *Wilson* dealt with an entirely separate and independent portion of § 3731 that enables the prosecution to appeal, in a criminal case, "a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment." The *Wilson* Court's conclusion that Congress intended to "allow appeals whenever the Constitution would permit" rested on legislative history that applied exclusively to this paragraph of § 3731. *See id.* at 337-39.

[5]The provision that concerns us in this case is found in the second paragraph of § 3731. The first and third paragraphs of this section read in full:

Congress was especially concerned that federal prosecutors might abuse the ability to interlocutorily appeal suppression orders,[6] thereby unnecessarily disrupting proceedings, and that certification was supposed to act as a meaningful check. While it is possible that Congress decided to counter potential prosecutorial abuse by requiring an unreviewable, boilerplate certification by the prosecution alone, the text of § 3731 does not unambiguously express this intent.

## II.   Legislative History

Where the statutory language is ambiguous, we "turn to the legislative history for evidence of congressional intent." *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1145 (9th Cir. 2007). Although the legislative history fails to directly resolve the question presented here, it does shed some light on Congress's purpose in adopting § 3731's second paragraph.

The second paragraph was adopted, with slightly different

---

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

. . . .

An appeal by the United States shall lie to a court of appeals from a decision or order, entered by a district court of the United States, granting the release of a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order granting release.

[6]For stylistic purposes, I will rely on "suppression orders," "suppressing evidence," and like phrases as shorthand for an "order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding."

language,[7] as part of the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, tit. VIII, § 1301(a), 82 Stat. 197, 237-38. The original Senate and House bills did not contain the provision; it was proposed as an amendment to the Senate bill by Senator Allott of Colorado. *United States v. Greely*, 413 F.2d 1103, 1104 n.2 (D.C. Cir. 1969) (per curiam); 114 Cong. Rec. 14787, 14787-89 (1968). The amendment was identical to a previously-passed House bill, H.R. 8654, 90th Cong. (1967). Senator Allott's remarks and the report accompanying H.R. 8654 reveal three concerns addressed by the provision.

First, the legislation was designed to facilitate successful prosecutions by granting the government an opportunity to challenge the suppression of important evidence. Senator Allott hoped that "our law-enforcement agencies will be given the tools with which to launch a meaningful attack on the critical problem of crime in this country," and he explained that "[i]t is obviously much better to prove a case with tangible and concrete evidence than upon oral testimony and observa-

---

[7]The original language of the certification requirement provided that the United States Attorney was to certify " 'to the judge who granted such motion that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of the charge pending against the defendant.' " *See United States v. Greely*, 413 F.2d 1103, 1104 (D.C. Cir. 1969) (per curiam). The requirement was amended to its current form in 1971 as part of the Omnibus Crime Control Act of 1970, Pub. L. No. 91-644, tit. III, 84 Stat. 1880, 1890 (1971). Although the 1971 amendment slightly altered the language of the certification requirement, the primary purpose of amending the suppression order paragraph was to make "the Government's right to appeal an order suppressing evidence applicable to all criminal proceedings, including probation revocation hearings, not merely to pretrial suppressions." S. Rep. No. 91-1296, at 2 (1970); *see also United States v. Hines*, 419 F.2d 173, 174-5 (10th Cir. 1969) (holding that the government's right to appeal under the 1968 statute did not apply to probation revocation hearings). One final amendment to the now-second paragraph corrected a grammatical error. Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, tit. XXXIII, § 330008(4), 108 Stat. 1796, 2142.

tion of witnesses." 114 Cong. Rec. at 14788 (statement of Sen. Allott). The House report noted that an order granting a motion to suppress evidence is often "in effect, a final order bringing the prosecution to an end, for the Government is unable to proceed without the suppressed evidence." H.R. Rep. No. 90-603, at 2 (1967).

Second, the provision was intended to lead to "the development of a complete body of law regarding the legality of searches and seizures presently hampered by the inability of the Government to bring to the appellate courts significant cases" arising out of suppression orders. *Id.* at 3. "[T]he law of search and seizure and confessions [was] highly uncertain," and the amendment would ameliorate that uncertainty. 114 Cong. Rec. at 14788 (statement of Sen. Allott) (internal quotation marks omitted). In *United States v. Dior*, we recognized this concern, noting that the "the overriding purpose of the provision permitting immediate government appeals from suppression orders was to deal with the harm which the lack of government appeals worked on the development of the law of suppression." 671 F.2d 351, 356 (9th Cir. 1982).

These two goals were not to come at the expense of a criminal defendant's rights. A report authored by the President's Commission on Law Enforcement and Administration of Justice, cited favorably by Senator Allott, stated that "[w]here the prosecution is permitted to appeal from pretrial orders, rules should be established to protect the defendant's interest in obtaining a speedy trial." 114 Cong. Rec. at 14789. The Commission admonished the government that "appeals should not be taken routinely from every adverse pretrial ruling. They should be reserved for cases in which there is a substantial law enforcement interest." *Id.* The House Committee on the Judiciary stressed that the "rights of the defendants, of course, have been taken into consideration and are in no way impinged upon" by the bill. H.R. Rep. No. 90-603, at 3. The provision required the prosecution to pursue appeals within thirty days of the district court's decision and to prosecute

them "diligently."[8] The courts of appeals were expected to dispose of these appeals "with despatch so that the interest of justice, both on the part of the defendant and the Government, will be met as quickly as possible." *Id.*

There is nothing in the legislative history that speaks directly to the propriety of courts reviewing the United States Attorney's certification. By revealing Congress's concerns, however, the history guides us in our efforts to liberally construe the statute in order to effectuate all of its purposes.

### III.   Proper Interpretation of § 3731

The legislative history confirms that Congress was not concerned exclusively with facilitating successful prosecutions; rather, Congress was also eager to see the courts develop a coherent body of search and seizure law, and was solicitous of defendants' rights. It is these latter goals that inform our understanding of the certification requirement.

There is no dispute that the government is forbidden from appealing for the purpose of delay or from an order suppressing evidence that is insubstantial or immaterial, and *Loud Hawk* does not modify those substantive conditions. The precise question before us concerns the procedure by which Congress chose to enforce these restrictions: How, in other words, does the certification requirement impact our ability to ensure that the government is complying with the jurisdictional conditions?

If the same conditions were present without a certification requirement, we would presumably have the authority and duty to ensure that they were satisfied. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (stating that courts "have an

---

[8]The fourth paragraph of § 3731 provides: "The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted."

independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party"). If, for example, the government violated the fourth paragraph of § 3731 by filing its notice of appeal more than thirty days after the pertinent order, this court would consider dismissing the appeal, even though the statute does not expressly grant us the right to independently review the timeliness of the filing. *See, e.g.*, *United States v. Belgarde*, 300 F.3d 1177, 1180 (9th Cir. 2002) (considering timeliness of § 3731 filing); *United States v. Shaffer*, 789 F.2d 682, 686 n.3 (9th Cir. 1986) (same).

Given this presumptive ability to determine our own jurisdiction, the majority must have concluded that the second paragraph of § 3731 not only expressly imposes an obligation on the United States Attorney, but also silently strips this court of its authority to review jurisdictional facts. We are not, however, told *why* Congress would wish to take the highly unusual step of precluding us from independently reviewing our jurisdiction.

Section 3731 serves a gatekeeping function by balancing the prosecution's desire to appeal suppression orders with the defense's and court's interest in a prompt and orderly trial. Congress may have tasked prosecutors with reviewing potential interlocutory appeals in the first instance, but experience with certification provisions in two other significant contexts suggests that Congress did not intend to wholly outsource our jurisdictional inquiry.

In civil actions, courts of appeals may entertain an interlocutory appeal from a non-final district court order if the district judge certifies that he is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The certification "serves the dual purpose of ensuring that [appel-

late] review will be confined to appropriate cases and avoiding time-consuming jurisdictional determinations in the court of appeals." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474-75 (1978). Importantly, though, once the district judge opens the gate to this court, we exercise complete, undeferential review to determine whether the court properly found that § 1292(b)'s certification requirements were satisfied. *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002); *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). Only the district judge's decision to deny certification escapes our scrutiny. *Executive Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1550 (9th Cir. 1994); *Oppenheimer v. L.A. County Flood Control Dist.*, 453 F.2d 895 (9th Cir. 1972) (per curiam).

Our review of a district court's decision to grant or deny a habeas corpus petitioner's request for a Certificate of Appealability ("COA") is even broader. "In federal habeas corpus proceedings, . . . the exercise of appellate jurisdiction is dependent entirely upon the issuance of a COA." *Phelps v. Alameda*, 366 F.3d 722, 726 (9th Cir. 2004); *see also* 28 U.S.C. § 2253(c). When a district judge or motions panel grants one, a court of appeals merits panel is not irrevocably vested with jurisdiction over the appeal. In *Phelps v. Alameda*, we held that "COAs are not beyond merits panel scrutiny"; after one is granted, we retain the "power to vacate or to contract it." 366 F.3d at 727, 728. In fashioning this rule, the *Phelps* court acknowledged that "we must be ever mindful of the gatekeeping and efficiency functions of the certificate of appealability." *Id.* at 728 (internal quotation marks omitted). Nevertheless, the court explained, "the pursuit of efficiency alone does not support an absolute bar against examining the validity of a COA." *Id.* And, in contrast to § 1292(b) certification denials, when a district court denies a COA, we review its determination upon the petitioner's request. *See, e.g.*, *Stokes v. Schriro*, 465 F.3d 397, 401 (9th Cir. 2006).

These two examples show the remarkable nature of the majority's ruling. In two core areas of our jurisdiction, Con-

gress has employed the device of certification to assist us in—without eliminating—*our* determination of jurisdictional conditions. Without explanation as to why Congress would desire such a result, the majority tells us that a prosecutor deserves much greater deference than district judges tasked with analogous gatekeeper-like responsibilities. This simply does not square with the notion that the decision to exercise jurisdiction, is, at bottom, a judicial, not a prosecutorial, function.

This paradox is puzzling when one conceives of the § 3731 certification requirement as a gatekeeping device, but it becomes troubling when the certification is viewed as admonitory in nature.

Certifications are formalities, and in some contexts they may "perform a cautionary or deterrent function by acting as a check against inconsiderate action." Lon L. Fuller, *Consideration and Form*, 41 Colum. L. Rev. 799, 800 (1941). Parties in the federal courts are familiar with certification requirements that serve a cautionary function. Under Federal Rule of Civil Procedure 11, attorneys must sign the filings they submit to the district court, and, upon filing, the attorneys certify that the papers are not being filed for an improper purpose, such as to harass or cause delay; that legal contentions are supported by existing law or by nonfrivolous arguments to alter existing law; that factual contentions have or are likely to have evidentiary support; and that denials of factual contentions are warranted on the evidence, belief, or lack of information. Fed. R. Civ. P. 11(a), (b). At the appellate level, attorneys' briefs are subject to specific type-volume limitations, Fed. R. App. P. 28.1(e)(2), 32(a)(7)(B), and they must contain a Certificate of Compliance that attests that the brief adheres to the applicable limitations, Fed. R. App. P. 32(a)(7)(C).

These certifications do not serve a gatekeeper function, and they are not a means of presenting the courts with useful information. They serve a much more basic purpose: remind-

ing the parties of their obligation to comply with the courts' rules. *See, e.g.*, Fed. R. Civ. P. 11 advisory committee's note ("The rule continues to require litigants to 'stop-and-think' before initially making legal or factual contentions."). It goes without saying that we give no weight to such certifications when determining whether the attorneys have committed any sanctionable violations; the attorneys' self-interest makes the certification inherently untrustworthy.

The certification requirement in § 3731 serves a purpose similar to these rules. It provides a forceful reminder to federal prosecutors that "Congress recognized the importance of minimizing appellate interference in the trial process," *United States v. Dior*, 671 F.2d 351, 356 (9th Cir. 1982), and that the government is to take seriously its obligation to respect defendants' rights. By doing so, it implicitly recognizes that United States Attorneys are biased participants in criminal prosecutions. In the same way that most private attorneys would realize, in the absence of Rule 11's signing and certification requirement, that it is improper to pursue legal claims in order to harass an opponent, few prosecutors needed § 3731 to inform them that it is improper to file an appeal for the purpose of delay or to disrupt proceedings over an unimportant piece of evidence. The certification requirements exist in both instances not simply to describe the regulations, but to put the parties on notice that Congress and the courts take seriously the choices attorneys make.

Given Congress's clearly expressed concern over the potential for prosecutors to abuse their appellate rights, it is hard to believe that the statute requires us to blindly trust United States Attorneys or those who supervise them.[9] The

---

[9]While I have great respect for the author of the Opinion and his distinguished prior service as a senior Department of Justice official, I wonder if recent experience might suggest that the comfort he finds in the supervision of Main Justice officials over the activities of United States Attorneys might not always be well placed. *See* John McKay, *Train Wreck At the Justice Department: An Eyewitness Account*, 31 Seattle U. L. Rev. 265 (2008).

men and women of the Department of Justice are fine public servants, dedicated to advancing the public interest. Nevertheless, Congress's recognition of prosecutors' self-interest is inherent in § 3731, and we would be unfaithful to congressional intent if we repudiated that recognition when construing the statute.

By my lights, the *Loud Hawk* rule more effectively advances the statutory goals than the majority's approach. For starters, the *Loud Hawk* rule is modest. Section 3731 provides that the government may only appeal the suppression of evidence that "is a substantial proof of a fact material in the proceeding." In *United States v. Adrian*, we held that "we will find the government to have satisfied this additional jurisdictional requirement if, assuming that the evidence would be admissible, a reasonable trier of fact *could* find the evidence persuasive in establishing the proposition for which the government seeks to admit it." 978 F.2d 486, 491 (9th Cir. 1992) (emphasis added). *Adrian* explicitly rejected an interpretation that would "require the government to demonstrate that the evidence is highly probative." *Id.*

The burden on the prosecution is thus slight, and this should allay any fear that *Loud Hawk* might undermine the first identifiable purpose of the statute, the facilitation of successful prosecutions. Prosecutors pursuing worthy appeals have little to fear from our precedents. Certifying the § 3731 requirements presents little administrative inconvenience, and a prosecutor actively involved in the case should have no difficulty making the necessary showing to the court. In fact, the majority's rule and the *Loud Hawk* rule would lead to divergent results only in those cases in which the government is appealing for the purpose of delay, or challenging the suppression of immaterial or insubstantial evidence. The approach the majority adopts today will allow such appeals to proceed, although this appears to contravene Congress's clear intent.

Congress also hoped that § 3731 would yield a well-developed body of search-and-seizure jurisprudence. The *Loud Hawk* rule furthers this goal in two ways. First, it keeps the government honest by ensuring that prosecutors do not take appeals from the suppression of immaterial or insubstantial evidence in order to establish favorable law. As repeat players in the federal courts, prosecutors have an incentive to take the long-term view. When an opportunity to make seemingly "good law" comes along, there will be a temptation to pursue it even if it will have little impact on the case in which a prosecutor is currently involved. For example, if the district court suppresses some trivial evidence that the prosecutor feels is unnecessary in that particular prosecution, she may appeal anyway if the facts are such that she has the chance to have the courts of appeals announce a government-friendly rule of law.[10]

Additionally, the *Loud Hawk* rule favors the development of the law by enabling the courts of appeals to gain a better understanding of the facts of appealed cases. Interlocutory appeals from suppression orders are typically taken before trial, and the record is therefore necessarily limited. This means that a panel could be tasked with making new law in a near factual vacuum. The law develops most properly when judges can evaluate all facts relevant to a case, and not just those that pertain to some discrete issue. Under *Loud Hawk*, this court gains familiarity with the case by assessing whether the excluded evidence is a substantial proof of a fact material in the proceeding. The government will explain why the evidence is meaningful in light of the larger evidentiary picture, and the defense has the opportunity to contest that explanation. By the time jurisdiction is established, the judges will

---

[10]That the government chooses its appeals with care is not mere speculation. Rather, it is the raison d'etre of the policy that requires federal government lawyers to obtain approval from the Office of the United States Solicitor General before appealing. *See FEC v. NRA Political Victory Fund*, 513 U.S. 88, 96 (1994).

have a greater sense of what the case is about and the consequences of their potential rulings.

The *Loud Hawk* rule also accommodates the statute's final purpose, protecting defendants' rights. The majority finds comfort in its aspirational rhetoric; my colleagues "expect the concerns about frivolous or disruptive attempts to involve us prematurely in ongoing trial proceedings . . . will be addressed by the government's wise and careful invocation of § 3731 appeals." Our experience belies this optimism. We have noted that, "[u]nfortunately, some government attorneys from time to time treat the § 3731 certification requirement as a mere formality and even neglect to file the certification in a timely manner." *United States v. Gantt*, 194 F.3d 987, 997 (9th Cir. 1999); *see id.* at 997 & n.4 (citing cases from this and other circuits); *cf. United States v. Kojayan*, 8 F.3d 1315, 1324 (9th Cir. 1993) (stating that "[t]he overwhelming majority of prosecutors are decent, ethical, honorable lawyers who understand the awesome power they wield, and the responsibility that goes with it. But the temptation is always there: It's the easiest thing in the world for people trained in the adversarial ethic to think a prosecutor's job is simply to win"; citing cases in support).

If Congress had explicitly made the United States Attorneys' certifications conclusive, as it did for the scope-of-employment certifications under the Westfall Act when removal was at issue, I would concede that the court would be left with no choice but to place our faith in the executive branch. As it currently reads, however, § 3731 places no such restrictions on our jurisdictional review. *Loud Hawk* correctly demands that we respect our jurisdictional limits, and in doing so, shield defendants and their speedy trial rights from the occasional misguided prosecutor.

Recognizing our concern about improper appeals, the majority attempts to minimize the impact of its holding. It insists that we will not blindly trust the government, nor allow

it to disrupt proceedings on a whim. This is because "[i]f the merits of the appeal independently require us to question whether the evidence truly is material, the government's certification is not conclusive."

This non sequitur completely mischaracterizes my position. I do not assert that the *Loud Hawk* rule affects our merits analysis; I recognize that under either the *Loud Hawk* rule or the majority's rule, a § 3731 certification has no bearing on any substantive assessment of the materiality of suppressed evidence.[11] The point remains, however, that the prosecution will have unchecked authority to pursue interlocutory appeals from all suppression orders. Even if this court were certain in a given case that the certification was inaccurate and that the jurisdictional conditions of § 3731 were violated, we would be powerless to dismiss, and we would be forced to adjudicate the appeal on the merits. *See e.g.*, *United States v. Laville*, 480 F.3d 187, 196-98 (3d Cir. 2007) (McKee, J., concurring) (expressing "concern[ ] that the certification the Government filed pursuant to 18 U.S.C. § 3731 may be disingenuous," noting that "it appears to have been reflexively filed," and "doubt[ing] that the § 3731 certification was afforded the consideration Congress intended," but acknowledging that circuit precedent foreclosed the possibility of review). The majority's dogged attack on this straw man suggests that it recognizes this problematic result and that it is uncomfortable with the breadth of its own ruling.

By raising our power to expedite review, the majority also discounts the disruptive value of § 3731 appeals. It currently takes nine to ten months from the filing of an interlocutory

---

[11]The majority somehow finds consolation in the notion that the certification will have no bearing on the substantive analysis. The materiality *vel non* of the suppressed evidence will not be relevant in many, if not most, § 3731 interlocutory appeals. Thus, the *Loud Hawk* inquiry will typically be the *only* opportunity this court has for reviewing the government's claim that the evidence suppressed is in fact material.

appeal in a criminal case to its placement on an argument calendar.[12] Even if we were able to somehow reduce that time by half, it would still amount to an inordinate delay in trial proceedings. Under the naked power the majority gives the government, appeals taken for the purpose of delay will achieve that purpose regardless of our alacrity.

Indeed, this very appeal demonstrates the *Loud Hawk* rule's necessity. The government filed its notice of appeal in this case on March 16, 2006. It filed another interlocutory appeal regarding a separate issue on August 23, 2006, and yet another on September 27, 2006. In this appeal, the government initially refused to provide the three-judge panel with any evidence to support its bare certification that the suppressed evidence was material, further delaying proceedings. The government's litigation strategy has effectively derailed the criminal trial, while it no doubt continues its search for more witnesses and victims. The trial date remains in limbo, and the defendants' right to a speedy trial has been completely frustrated.

Further, the majority fails to apprehend the design of the *Loud Hawk* rule, pointing out that our precedent "does nothing to get the appeal on an argument calendar any faster than the prevailing certification-only rule," and that "because we must first determine the jurisdictional issue and then determine the merits separately, a final determination under the *Loud Hawk* rule may well take longer." This misses the point. Even if it were true that the majority's rule will lead to a slightly faster disposition of individual § 3731 appeals, that hardly warrants the conclusion that *Loud Hawk* is not "efficient." *Loud Hawk* provides a deterrent to frivolous appeals.

---

[12]As noted above, § 3731 requires the government to file an appeal of a suppression order within thirty days of the ruling. Although this provision is salutary, defendants and district courts (which also have an interest in speedy proceedings) still must endure the substantial lag between the government's notice of appeal and our decision.

As with most deterrents, the benefit is not realized in the process that follows a breach of the underlying rule, but in the cases in which the rule is scrupulously observed for fear of that process.[13] To eliminate any confusion, it may be helpful to review the way in which *Loud Hawk* operates as a deterrent.

Under the rule we adopt today, the only thing standing between a prosecutor and an interlocutory appeal is a piece of paper. A prosecutor faced with an unfavorable suppression order must decide within thirty days whether to appeal, and must leave enough time to obtain the approval of the Solicitor General.[14] If the suppressed evidence is of questionable value, will she take the time to fully consider its materiality? If there is even the slightest chance that the evidence might bolster the prosecution's case or buy time to further prepare its case, the temptation will be there to forgo any serious consideration of the certification requirements, secure in the knowledge that

[13]An example: Traffic regulations are designed to keep drivers and pedestrians safe, and law enforcement vehicle patrols further that goal by providing a monitoring and enforcement mechanism. When a violator is detected and pursued, the momentary danger may be elevated if a high-speed chase ensues. Are we to conclude that patrols do not keep drivers and pedestrians safe, then? Do they undermine the very goal they seek to advance? Hardly. Countless drivers obey the traffic laws because of the threat of being punished, and that is how the safety gains are achieved in the aggregate. All other things being equal, so long as the safety gain from the violations deterred outweighs the elevated levels of danger during police chases, law enforcement will provide a positive benefit.

I concede that beyond my own intuition, I "have no evidence that the certification-plus rule of *Loud Hawk* is more efficient than simply accepting certification as sufficient to establish our jurisdiction." I am not the one seeking to overturn a three-decades-old precedent however. If the majority seeks to impugn my reasoning because it is not empirically substantiated, I would think it would offer some evidence of its own.

[14]Nothing in § 3731 requires the local United States Attorney to seek the approval of the Solicitor General and nothing in the rule the majority fashions today gives the courts of appeals the authority to question whether it has occurred.

we will not question the justification for the decision to appeal.

The *Loud Hawk* rule, by contrast, is conducive to a thoughtful certification process. Knowing a modest showing in support of the certification will be required, the prosecutor has incentive to seriously consider whether to seek an interlocutory appeal. Even a hasty decision to challenge the suppression of insubstantial or immaterial evidence might be reconsidered when actually facing the task of *Loud Hawk* compliance. Similarly, a written showing provides the prosecutor's superiors with something they can truly evaluate; they need not rely on the trial prosecutor's vague assurances that the suppressed evidence is important.

Like the majority, my hope and expectation is that the government will act wisely and carefully when deciding whether to pursue an interlocutory appeal, and that its unchecked ability to do so will not diminish the independent judgment of district judges in the making of important evidentiary rulings. Unlike the majority, though, I would measure that confidence with caution. To paraphrase a former President, I would "trust, but verify."[15] Only this way can we provide the congressionally desired review necessary to safeguard defendants' rights.

The *Loud Hawk* rule secures the continuity of proceedings by ensuring that the appeal is not taken for purposes of delay and involves evidence that is both substantial and material. The rule the majority embraces today permits a prosecutor to disrupt proceedings with the stroke of a pen. Congress did not require us to permit that when it enacted § 3731, and we should not do so now.

---

[15]*See, e.g.*, Remarks on Signing the Intermediate-Range Nuclear Forces Treaty, II Pub. Papers 1455 (Dec. 18, 1987) (Ronald Reagan).